Malone v. Murphy.

---

MATHEW MALONE *v.* JOHN MURPHY.

*Error from Leavenworth County.*

Article 3 of "An Act to Incorporate cities of the State of Kansas," providing that the Mayor "shall have original jurisdiction of all offenses against the laws of this State committed within the limits of the city, and by virtue of his office shall be a Justice of the Peace," taken in conjunction with the Criminal Code, authorizes the Mayor of Leavenworth to use all the machinery necessary to hold an offender to bail, that may be employed by a Justice of the Peace. When the Mayor is thus sitting, the tribunal is a Court within the meaning of Section 1, of Art. 3, of the Constitution and the proceeding is a prosecution.

In an action for malicious prosecution *Semble*, that the rule in measuring damages, which limits them to compensation only, is deemed most nearly logically correct, but *held* that the rule allowing "vindictive damages" will not be disturbed when a change will make no difference in results. The necessity of great caution in giving the rule, recognized.

"Malice" and "want of probable cause," both *held* necessary to sustain an action for malicious prosecution—and *held* that both must be sustained by affirmative proof—found from the testimony as facts.

*Semble* the jury *may* infer malice from want of probable cause, but *held* that they are not bound so to infer it.

A charge to the jury in such case, that malice was implied from want of probable cause *held* erroneous.

This was an action for malicious prosecution, brought in the District Court of Leavenworth County by defendant in error against the plaintiff in error. The action arose as follows: Plaintiff in error made an affidavit before D. R.

Anthony, Mayor of the City of Leavenworth, averring "that on the 12th day of October, A. D. 1863, one John Murphy did feloniously steal, take and carry away one over-coat of the value of eight dollars, one saddle-bags of the value of three dollars, one pistol of the value of fourteen dollars, two blankets of the value of six dollars each, all the property of said affiant." A warrant was thereon by the Mayor issued and Murphy arrested and brought before the Mayor who proceeded to hear the charges against him, whereupon he was discharged.

In this action in the Court below, it was in the petition therein alleged, that this affidavit and arrest were made maliciously and falsely, and for the purpose of doing injury to the defendant in error. The defendant below plead general denial, and that he acted under orders from a superior military officer.

On the trial of the case in the Court below, after the introduction of the evidence of both parties.

The Court, among other things, charged the jury as follows: " *The rule of law is, that if there was an absence of probable cause, the prosecution was malicious, the law implying malice from want of probable cause*," and also: "If, then, you should find that there was a want of probable cause, you must find for plaintiff, for the law presumes malice from want of probable cause, and no other proof of malice is required." To which charges the defendant then and there excepted.

The Court further charged the jury: "It is important to determine whether the defendant knew, or had been advised, before commencing proceedings, that the plaintiff, in taking these goods, was acting under orders from a superior officer. If he had been so advised, and if he stated that fact to the counsel when asking his advice, then this defense is made out; but if he withheld from him, or did not state that fact to the counsel, then this defense on this ground is not made out, and simply amounts to nothing." To which charge the defendant then and there excepted.

On the measure of damages, the Court charged that the jury might take into consideration the probable expenses of conducting this suit, and in addition,. "I charge you, that you may give what in law we know as vindictive or punitive damages, such damages as will not only be a punishment to the defendant, but will also be a warning to others against committing like acts, and in a case of this description you may give heavy damages." This was also excepted to.

On the trial, the original affidavit in the proceeding before the Mayor was offered in evidence and received under exceptions.

*Thomas P. Fenlon* and *W. P. Gambell* for plaintiff in error.

*Hiram Griswold* for defendant in error.

The case was argued by *Fenlon' and Gambell,* and the following points submitted for plaintiff in error.

I.   The Court erred in admitting in evidence the paper called an affidavit.

1.   It does not charge the crime of larceny, in this, that it is nowhere in the alleged affidavit stated *where* the acts charged were committed.

2.   It does not charge a crime of which the Mayor's Court of Leavenworth had jurisdiction. By the charter of the City of Leavenworth, (Laws 1862, page 388,) it is provided, That the Mayor "*shall have original jurisdiction of all offenses against the laws of the State, committed within the limits of the City.*" The affidavit does not state that the crime was committed within the limits of the City —nor even within the limits of the County or State. We deem it unnecessary, under the plain language of the Statute, to cite authorities to show that the jurisdiction of a Mayor's or Justice's Court must appear on the papers and record before it.

3. There is no such Court as a Mayor's Court of Leavenworth City, and the Mayor of Leavenworth has no judicial power.

It will hardly be contended that the "Mayor's Court of Leavenworth City" is a Court known to, or recognized by, either the Constitution or the Statutes of the State. In Sec. I, Art. III., of the Constitution of the State of Kansas, the judicial power of the State is "*vested in a Supreme Court, District Courts, Probate Courts, Justices of the Peace, and such other Courts inferior to the Supreme Court, as may be provided by law.*" Under the power given to the Legislature in this Section to *provide by law* for other Courts, it will not be contended that a "Mayor's Court" has been established or provided.

Now, did the Mayor of Leavenworth, as such, have any power to issue a warrant for a criminal offense and examine into its commission? To issue criminal warrants and hold preliminary examinations, to discharge or bind over for further trial persons charged with a violation of State Laws, is certainly the exercise of judicial power, and this power can only be exercised by an officer or Court vested with the constitutional authority so to do. Sec. I, of Art. III., of "An act to incorporate cities of the State of Kansas," page 388, Compiled Laws, 1862, seeks to confer upon the Mayor judicial power, to be exercised in cases of violation of State Laws, when such violation occurred within the limits of the city. Was it competent for the Legislature to confer this power upon the Mayor as such?

The Constitution, Sec. I, Art. III., gives the Legislature power to provide by law such *Courts*, not created by the Constitution, as may be deemed necessary, and vests all *judicial power* of the State in *Courts* established by itself or provided by the Legislature. The Legislature, then, has transcended its power and authority, in attempting to confer *judicial power* upon a Mayor, as such. There was

no attempt in the section of the Statute, to create or provide *a Court*, but having provided for a certain officer—called a Mayor—it is sought to confer upon him powers which the Constitution permits to be exercised only by *Courts.*

4. But it may be contended that the Mayor is made, by the Statute a Justice of the Peace, and vested with his powers, and that consequently he possesses judicial power.

The Constitution of the State, Sec. 9, Art. 3, provides how Justices of the Peace shall be elected, and how long they shall hold their office; and it is not in the power of the Legislature to create a Justice of the Peace in any different way from that designated and prescribed by the Constitution. 14 *Ill.*, 419.

This, then, was no prosecution—much less a malicious prosecution.

II. The Court erred in charging the jury that the law implies malice from a want of probable cause.

The law does no such thing. But the jury *may* infer malice from an absence of probable cause. So they may draw the same inference from other facts, if proved. It is the province of the jury alone to draw this inference. It the law as given by the Court in this charge is correct, then the jury would be *bound* to find against the defendant in every case where a want of probable cause is shown. *Vanderbilt* v. *Mathis*, 5 *Duer.*, 304; *Buckley* v. *Smith*, 2 *Duer* 261; *Davis* v. *Cook*, 3 *Iowa*, 539; *Campbell* v. *O'Brien*, 9 *Rich*, (*Law*,) *S. C.*, 204; *Graves* v. *The State*, 12 *Wis*, 591.

III. The Court erred in giving and refusing the instructions as to the advice of counsel.

The Court held, that if the party, no matter however honestly he did it, withheld from, or omitted to state to the counsel any material fact in the case, the defense that the prosecution was commenced under advice of counsel, failed, and amounted to nothing. In this the Court erred. The law only requires a party to act in good faith. If he

does so, he will be protected. *Thompson* v. *Mussey*, 3 *Greenleaf R.*, 305 ; *Stone* v. *Swift*, 4 *Pick.*, 393 ; *Blunt* v. *Little*, 3 *Mason*, 102 ; *Commonwealth* v. *Bradford*, 9 *Met.*, 268 ; 2 *Greenleaf's Ev.*, *Sec.* 459.

IV.  The Court erred in charging the jury that they might take into consideration the probable expenses of conducting the suit.

1st.  There was no proof of expenses incurred by plaintiff in conducting the suit.

2d.  If there had been any such proof, the instruction was too broad.  It would allow the jury to take into account what the plaintiff had paid for counsel fees, &c.

3d.  But it was certainly erroneous to instruct the jury that they might take into account the *probable expenses*. They certainly could allow for no expenses which were not *proved*.

V.  The Court erred in charging the jury that they "might give what, in law, are known as vindictive or punitive damages,—such as will not only be a punishment to the defendant, but will also be a warning to others against committing like acts ; and in a case of this description you may give heavy damages."

The jury could not give punitive damages.  They could only allow the plaintiff what damages he had shown. But they had no right to inflict damages upon him for the purpose of making their verdict a warning to others.  2 *Greenleaf's Ev.*, (*5th Ed.*) *Secs.* 253-5, *and cases cited.*

The case was submitted on brief by *Griswold* for defendant in error, making the following points :

1st.  It is claimed the Court erred in admitting the paper in evidence called an affidavit.

This question raises the point whether, if the affidavit charging a crime be defective, an action for malicious prosecution will lie.  The offence was charged, but the place where the crime was committed, not; the Mayor took juris-

diction, the defendant was arrested, and the record shows that the charge was that the larceny was committed in the city. The defendant, therefore, has suffered and been made liable to suffer all the consequences in his reputation and feelings,—pecuniarily and otherwise, as though the affidavit had contained the allegation that the offense was committed in Leavenworth. That is enough to lay the foundation for an action. 10 *U. S. Dig.*, *p.* 321, *Sec.* 16; 11 *id. p.* 323, *Sec.* 3; 13 *id. p.* 474, *Sec.* 37; 18 *id. p.* 515, *Sec.* 20; 1 *Am. Lead. Cases*, 216, *and cases there cited.*

2d. The Court charged the jury that from absence of probable cause, the law inferred malice.

On this point the Court charged more favorably for the plaintiff below than it was requested to do, because it was not necessary to ask for such a charge. There was enough in the case to *compel* the *jury* to find malice; and therefore the plaintiff below was willing to avoid all controverted points and questions. It is admitted that this is a controverted point. On the question of malice and proof of malice, almost as many shades of opinion may be formed as there are opinions recorded; ranging from this, that *express* malice must be *proved* on the one hand, to this that it is an inference of law independent of evidence on the other. I think this Court may decide this question as though it was an unsettled one.

These authorities sustain the Judge below in his charge. 13 *U. S. Dig.*, 474, *Secs.* 33-35; 12 *id. p.* 428, *Sec.* 21; 2 *Greenleaf's Ev.*, *Sec.* 453.

On principle, how is it?

This principle is well established, that the *belief* of the person commencing the prosecution is not sufficient. It must be belief, founded upon sufficient *facts*. Not only so, but it must be founded upon facts and circumstances sufficient to warrant *a cautious man* in the belief that a crime has been committed. All the definitions breathe the same spirit, that the facts and circumstances must be such as to

warrant an impartial, reasonable man, of common capacity, with ordinary caution, to *believe* the offense has been committed. Various language is used, but the sentiment is substantially the same, whether found in the opinion of a judge or in elementary works. *Ash* v. *Marlow*, 20 *Ohio Rep.*, 129 ; *Stone* v. *Crocker*, 24 *Pick. Rep.*, 86 ; *Munn* v. *Dupont*, 3 *Wash. C. C. Rep.*, 37; 13 *U. S. Dig.*, *p.* 474, *Sec.* 34 ; 12 *id.* 428, *Sec.* 21 ; 10 *id.* 321, *Sec.* 6 ; *Amer. Leading Cases*, 221.

The law then, may be considered settled, that *mere* belief is no element in the defense. But the question is, are these facts and circumstances from which a cautious, sensible man *ought* to believe ? If not, then the action will lie. But if the man *does* believe it, nevertheless, clearly he cannot be charged with *actual* malice. Clearly it cannot be *proved* as a fact is proved, because the fact does not exist. On what ground, then, can malice be established and the action be maintained when the belief does exist, but it is not the belief of a sensible, cautious man ? Solely on the ground that, from the absence of this probable cause, which is sufficient to inspire belief in the breast of a cautious man, the law *infers* malice. This is a legal and a logical necessity. The law *must* come up to this point. *Hall* v. *Snydam*, 6 *Barb. S. C. R.*, 89.

In the case put, there is no *actual* malice, for it is put upon the express ground that the prosecution was made in *good faith*. How, then, can it be *proved ?* It *cannot* be proved. Then, how can it be established ? Only by *legal inference*. And that is just what the Court charged the jury. Was there error in it ? See also, particularly, 9 Barr. Rep., 137 and Amer. Leading Cases, 222.

Again, why not hold the defendant responsible for his acts here as in all other cases, and subject to the same intendment of law ? If one utter slanderous words of another, the law holds that the charge was malicious. Suspicious circumstances may be given in evidence, indeed, but

33

only in mitigation of damages.    They  do  not remove the *legal imputation* of malice.

If one injure another in any way, deprive him of his liberty, he stands charged in law with all the consequences of his act, with intending to accomplish what he did, till he establishes a perfect defense.   We only ask the application of the same rule here.   The perfect defense is probable cause; till that is made, the legal imputation of malice continues to rest upon him.

I do not claim that malice  may be inferred simply from the acquittal of the criminal charge.   That is a circumstance to be considered in  determining  whether there be probable cause or not.   When it is proved there is not, and the facts from which  this  is  established,  are for the  jury, then the defendant is liable to the  application to this principle of law.

The question of probable cause does not arise.   The record sets out the evidence.   There was nothing in the case call ing for any charge from the judge on the subject, and what he said was extra judicial,—an opinion given outside of the case, though erroneous, cannot be assigned for error.

And, again, if there was error in the charge, yet if the Court, looking at the whole record, is satisfied justice has been done, *that the error has worked no wrong*; it will not reverse the judgment.   1 *Wend.*, 352.

3d.   Did  the  Court  err  in giving and refusing instructions as to the advice of counsel ?

I claim that before the defendant can be exonerated from liability because acting under the advice of counsel, he must show that he laid before his counsel a *full and correct* statement of the facts of the case, *so far as he is acquainted with them*.

There is nothing in giving or in refusing to give instructions in violation of this rule.

If this is not proved by the defendant that he did make such full statement, how can  he be said to be acting under

the advice of counsel?    See *Ash* v. *Marlow*, 20 *Ohio Rep.*, 130 ; 2 *Greenleaf's Ev.*, *Sec.* 459 ; 9 *U. S. Dig.*, *p.* 326, *Sec.* 2; 10 *id.* 321, *Sec.* 5 ; 12 *id.* 428, *Sec.* 19 ; 13 *id.* 474, *Sec.* 21 ; 14 *id.* 430, *Sec.* 8 ; 16 *id.* 451, *Sec.* 10 ; 19 *id.* 471, *Sec.* 14 *and* 15 ; *Hall* v. *Snydam*, 6 *Barb.*, *S. C. R.*, 88.

That part of Stone *v.* Swift, 4 Pick., 393, cited by plaintiff's counsel, is a mere *diotum*, as no such question was raised in the case, and the opinion is entirely extra-judicial.

In Thompson *v.* Mussey, 3 Geenleaf's Rep., 305, cited by plaintiff, the Court " *seemed* to think " the omission to state a certain fact (but which I think, this Court will think was really an immaterial fact,) was a matter of no great importance, and the defendant might still be protected if he acted under the advice of counsel.

I think the law is lenient enough to the defendant in allowing him this defense, when he *does* make a full statement.    It makes the peace, the liberty, the reputation of another to depend upon the opinion of an attorney, no matter how ignorant he may be of the law.    I think he should not be ignorant of the facts, as well.

Unless the defendant does state *all* the facts to his counsel, he does not act with that caution and prudence which the law requires before charging another with crime.

In Blunt *v.* Little, 3 Mason's U. S. Rep., 102, Story, J., uses this language :

" It appears to me that a necessary qualification of the admission (of the opinion of counsel) is, that it should be in proof, that the opinion of counsel is fairly asked upon the *real* facts and not upon statements which conceal the truth or misrepresent the cause of action.    If the law were otherwise, nothing would be more easy than to shelter the most malicious prosecution under a *total mistake of facts.* Probable cause of action, in the opinion of counsel, must depend upon facts which are brought before him, and, *if the whole facts*, which are material to form such opinion, are not presented to his mind, *how can the Court say he has given any opinion as to the* TRUE *cause of action ?*"

See also, Turner v. Walker, 3 Gill. and Johns. M. Report, 377.

4th.  The Court did not err charging the jury that they might take into consideration the probable expense of conducting the suit.  *Roberts* v. *Mason,* 10 *Ohio St. Rep.* 282, *and cases cited.*

5th.  Punitive damages, such as will punish the defendants and serve as a warning to others, against committing like acts.

The two phrases may be embraced under the comprehensive term of *exemplary damages.*

On this point the Court charged the law correctly.  See 10 *Ohio St. Rep.*, 280, *and Sedg. on Damages*, 453, *and authorities cited.*

*By the Court,* CROZIER, C. J.

The three points upon which the plaintiff in error relies for a reversal of the judgment of the Court below, are:—

1st.  The Mayor of the City of Leavenworth could not lawfully exercise judicial functions under the laws of the State.

2nd.  The District Court erred in charging the jury that they might give vindictive or punitive damages.

3d.  The District Court erred in charging the jury that the law implied malice from want of probable cause.

By Article III, Sec. 1 of the constitution the judicial power of the State is "vested in a Supreme Court, District Courts, Probate Courts, Justices of the Peace, and such other Courts inferior to the Supreme Court as may be provided by law."

Article III of "An Act to incorporate cities of the State of Kansas" (Compiled Laws, page 388,) defines the duties of Mayor, provides that he "shall have original jurisdiction of all offenses against the laws of this State, committed within the limits of the city, and by virtue of his office shall be a Justice of the Peace." It is objected that this

provision is not authorized by the section of the Constitution above quoted, because it attempts to confer judicial powers without in terms creating a Court. It will be discovered upon an examination of the whole article of the Statute referred to, in connection with the provisions of the Code of Criminal Proceedure upon the subject " of the arrest and examination of offenders " (*Compiled Laws*, *page* 242, *Sec.* 28, *et seq.*) that the Mayor may use all the machinery necessary to hold an offender to bail that may be employed by a Justice of the Peace. The provisions of the Code of Criminal Proceedure apply in terms to both. The Mayor is authorized to administer oaths, hear complaints, issue process, subpoena witnesses, take testimony, and hold to bail; and yet we are asked to say that such a tribunal is not a Court because the Act of the Legislature does not in terms style it a Court. We think we cannot adopt such a construction without sacrificing substance to technicality. When the Mayor is sitting for the examination of an offender against the laws of the State, the tribunal is a Court. In the case at bar the Mayor had jurisdiction of the subject matter, had power to proceed in it, and the proceeding was a prosecution.

The charge to the jury upon the subject of the damages, is complained of. There has been much discussion in the Courts, and among elementary writers upon the subject of vindictive damages, or " smart money " as they are sometimes styled. Several decisions sustain the rule as laid down by the Court below; and *Mr. Sedgwick*, in his admirable work upon the measure of damages, takes the same view. *Mr. Greenleaf* thinks the damages should be limited to compensation only. Logically we think he is right, and were the question an open one, we should be inclined to adopt his view of the subject. But it can make no difference practically which rule is adopted in the trial of a cause. If the jury shall be confined to compensation for the injury sustained, they will be authorized to estimate in-

jury to the feelings, mental anguish and tarnished honor; and in assessing damages for these things their own judgment can be their only guide. No standard can be fixed—no rule of compensation established. All must necessarily be left to the discretion of the jury, subject only to the power of the Court to determine whether their estimate, if apparently excessive, has been influenced by passion or prejudice. So under the other rule, their discretion, subject to the same power of revision must dictate the amount of the verdict.

We would rather adopt the compensatory theory, believing it to be more nearly logically correct; but the other having been long established, recognized and acted upon by enlightened Courts, we are not disposed to change it where a change would make no difference in results. In giving this rule to juries in cases, the details and circumstances of which are calculated to inflame their passions, the Court should be very careful to indulge in no loose expressions which would indicate that the feelings of the jury were in any manner to influence their action.

To sustain the action for malicious prosecution, two things are essential,—malice and want of probable cause. Malice is not of itself sufficient, neither is want of probable cause. Both must concur. Affirmative proof of malice is as necessary as affirmative proof of the absence of probable cause. Both are issues to be submitted to the jury, and both must be found from the testimony, as facts, by the jury, to sustain a verdict for the plaintiff.

How then can they be said to find from the testimony that there was malice if the Court shall say to them that the evidence which shall convince them of the absence of probable cause *must* convince them of the existence of malice? The evidence might clearly show that the defendant acted in the best of faith, but upon an entirely innocent mistake of fact. The jury might be fully satisfied of the entire absence of probable cause in such a case; yet

the rule as given the jury by the Court below would compel them to find that the prosecution was malicious. The real effect of the rule would be that the jury would find one of the essential facts, and the Court would find the other, and compel the jury to adopt its finding.

Such we do not believe the law to be. The jury may consider the absence of probable cause as a circumstance tending to show malice. It may be in individual cases a circumstance sufficient to satisfy them of malice. They are to be the sole judges of that. They are not bound by the law to be so satisfied. They may infer malice from want of probable cause, but they are not bound so to infer it.

Therefore we think the Court erred in charging the jury that malice was implied from want of probable cause, and the judgment will be reversed.

All the justices concurring.