LEAVENWORTH, LAWRENCE & GALVESTON RAILROAD
COMPANY v. EMMA A. RICE.

1. SPECIAL VERDICT; *Right to Require.* The district court is bound to order a special verdict whenever both or either party demand it.

2. NEGLIGENCE; *Agents and Servants of Railroad Co.; Signals.* The failure to give the signals as required by section 60 of chapter 23, general statutes, is negligence, but not necessarily gross negligence. The omission may be, in some cases, gross negligence, and in others negligence simply.

3. DAMAGES, *Caused by Negligence.* If injuries are caused by gross negligence, the jury may give exemplary damages; but to warrant exemplary damages the negligence should be so gross as to amount to wantonness.

4. CARE AND VIGILANCE — *Traveler on Highway—Operators of Railway.* It is equally the duty of persons traveling on the highway, and persons running a railway train, to exercise care and vigilance to prevent injuries; and where the railway track crosses a public highway or a street, parties using either are bound by the same rules as to care and diligence, which must correspond to the perils by which they are surrounded.

*Error from Anderson District Court.*

ACTION brought by *Emma A. Rice* to recover damages for personal injuries alleged to have been sustained by reason of the carelessness and negligence of the servants and agents of the *Railroad Company.* The principal questions were as to the care and vigilance required by the respective parties, and degree of negligence, if any, of which they were guilty. The case was tried at the December Term 1871 of the district court. The 6th paragraph of the general charge is copied in full in the opinion. The 4th, 7th, and 8th are as follows:

"4th. The jury are instructed that the positive evidence of the signal of the approaching train, by ringing the bell, or blowing the whistle, being given, is entitled to more weight than negative testimony in relation to said facts."

"7th. It was the duty of the defendant at the time mentioned in the plaintiffs petition to have a bell on each locomotive-engine, and to ring or cause to be rung such bell at a distance of at least eighty rods from the place the railroad of defendant crossed any public traveled road or street in the city of Garnett; and it was also at such time the duty of defendant that such bell should have been kept ringing until the locomotive-engine on defendant's railroad crossed said

roads or streets; and if the jury find that the defendant failed or neglected so to do, then the defendant was guilty of gross negligence, and the jury should so find.

"8th. If the jury find from the evidence that the defendant neglected or failed to ring the bell on the locomotive-engine, as required by law, then the plaintiff had a right to assume that the crossing, at the time and place mentioned in the petition, was safe, and to assume that the defendant was not then and there violating the law."

The *Railway Company* excepted to the 7th and 8th instructions so given; and said company asked several instructions, of which the 1st, 2d, and 4th are as follows:

"1st. The defendants are not liable for injuries suffered by the plaintiff in consequence of the team behind which she was riding being frightened by the train passing upon defendant's road, and by the appearance and noise of the train, without other acts clearly establishing culpable negligence on their part, [and this whether the whistle was sounded at the distance of eighty rods from the crossing or not.]

"2d. If the jury find that the defendant's signalled the approach of the train by ringing the bell, or blowing the whistle, then they must find that the defendants were guilty of no negligence from which the plaintiff has suffered an injury.

"4th. It was the duty of the person Vreeland, who was driving the plaintiff's carriage, on coming to the track, or if he knew of the track being located there, to *stop* and look up and down the track to see if there was a train approaching; and if you find that he neglected that duty you will find that the plaintiff was herself guilty of negligence which contributed to her injury."

From the 1st instruction so asked, the court struck out the words inclosed in brackets, and as so amended gave it to the jury. The 2d and 4th were refused. The *Railway Company* excepted. Verdict and judgment for plaintiff. New trial refused, and the *Railway Company* brings the case here on error.

*Solon O. Thacher*, for plaintiff in error:

1. The court erred in the refusal to direct the jury to find a special verdict on all the issuable facts in the case. The

statute expressly gave this right: § 7, ch. 87, Laws 1870. The statute clearly contemplates that there can be two kinds of verdicts, to-wit, a general verdict, with findings on particular questions of fact, and a special verdict. The court required the defendant to submit in writing certain questions to be answered by the jury. This was evidently a thing beyond the power of the court. There should have been a direction to the jury to pass upon and find all the issuable facts in the cause, and from these facts so found, together with those admitted by the record, the court could, as a matter of law, enter a judgment.

There is this additional remark to be made: from the record it would seem that the court was disposed to hold that even particular findings of fact must be furnished by counsel, though it does not appear that any were so furnished by either side. It is submitted that the court cannot impose on counsel the duty of furnishing the form of even particular questions of fact for the jury to pass upon.

2. The 6th paragraph of the general charge is open to the following objections: It is too broad. It makes the general negligence of the defendant's employees apply to this case. If at any time they were negligent in the management of the trains, or cars, or locomotive, the jury are charged that that makes the defendant liable. Such is not the rule. It is only such negligence as caused or contributed to the injury complained of in the petition, that makes the defendant liable—and even this will not render the defendant liable unless it is the kind of negligence complained of by the plaintiff, to-wit, failure to ring the bell or blow the whistle; and this must still further be limited by the principle of want of negligence on the part of plaintiff. Instructions so general, so sweeping as this, mislead a jury, and enable them to find large verdicts against a defendant, and still stand protected by the rule of law received from the court.

The charge also lays down a rule that is bad in this; it is not the care, or diligence, or foresight of a "prudent man" generally, that determines whether there has been negligence,

but of a prudent man, skilled as an engineer, or in the particular office filled by the employee. A prudent engineer may run his train far differently from what an unskilled prudent man may, and what would be the height of imprudence in the latter would be ordinary care and foresight in the other. The test is, what should a prudent engineer, brakesman, conductor, or master-mechanic do under these circumstances of the case? And this is a matter of proof. The charge left all this to be determined by the jury's views of what was prudence.

3. The 7th instruction given by the court was also erroneous. It is based on § 60, ch. 23, Gen. Stat. of 1868. The instruction assumes, without any proof being advanced, that Garnett is a city, within the meaning of this section; and whether courts can take judicial notice of the existence of cities and their boundaries under our peculiar mode of organizing mere villages into these municipalities, may be a doubtful question. 1 Greenl. Ev., § 6. But, admitting that the court was right in assuming that the accident happened within a city, it still remains to consider whether this was a proper charge. Third street, where the accident occurred, is near the northern boundary of the town of Garnett, and by the evidence much less than 80 rods therefrom. The whistle was sounded more than 80 rods north of this street, and according to the evidence of defendant's witnesses, kept sounding until after the accident. It is submitted that where the street to be crossed, lies near the boundary of a city, a fair construction of the statute would admit of either the bell or whistle being used for alarm, if the eighty-rod point came without the city limits. Especially should this rule hold good where the court can see that the end to be attained, notice of the approach of the train, can be answered just as well in one case as the other. But the court told the jury that a failure to ring the bell was *gross* negligence. In other words, although the whistle blew ever so long, and although the engineer supposed he thereby did his duty in the premises, yet the company is to be held for gross negligence if the bell was not rung. Such a construction of

the statute is technical and unreasonable; and it is in conflict with the decision of this court in *K. P. Rly. Co. v. Rollins*, 5 Kas., 181, wherein the court expressly held that it was for *the jury* to determine "whether there had been any negligence, and its nature and degree."

4. The 8th paragraph of the charge given is erroneous in this, it clearly relieves the plaintiff from the duty of looking up and down the track in approaching it; from exercising any care whatever. If the plaintiff saw the train, but heard no bell ring, or if she heard the rush of the train, or the whistle of the locomotive, and the bell was not rung, this charge instructed the jury that the plaintiff could recover. The rule is not as laid down by the court. Notwithstanding the failure to ring the bell, the plaintiff was bound to ordinary care in approaching the track: 13 Barb., 9 ; 12 Metcalf, 415; 13 Ill., 548; 41 N. Y., 296; 45 N. Y., 660. The failure to ring the bell by the defendant gave no warrant to the plaintiff to relax her own vigilance in crossing the track, nor did it release her from the duty of using all her senses as a prudent person to avoid injury. She was bound still to use her eyes, though no sound from the coming train reached her ears. The charge of the court released her from all this, and was therefore erroneous. *Gorton v. Erie Railway*, 45 N. Y., 660.

5. The 9th instruction given is believed to be bad law. The right of a party to anything more than *compensatory* damages has been frequently and earnestly denied. An examination of the cases where vindictive damages or smart money has been allowed, shows that it was only where the injury complained of was wanton or malicious; in other words, where the injurious act was committed with a grossly fraudulent, malicious, or oppressive motive. But the very wording of our statute clearly carries the idea that a party injured should only receive actual damages for the injury. The language employed is: "and the corporation shall also be liable for all damages which shall be *sustained* by any person by reason of such neglect." There is no pretense that vindictive damages are those "sustained" by an individual, but they are imposed

as a punishment to protect society. In the case at bar the law undertakes to punish the neglect complained of by a fine. The court told the jury that in addition to this punishment, the defendant was to be subjected to their caprice as to what sum they would mulct the corporation by way of punishing it for this supposed neglect. Neither the statute nor the common law justified the charge. 42 Mo., 79; 27 Mo., 33; 57 Penn. St., 345. And see 6 Nev., 224; 3 Am. Rep., 245.

6. There was error in refusing to give the 1st instruction asked by plaintiff in error, as asked. The court struck out the words, "and this whether the whistle was sounded at the distance of eighty rods from the crossing or not," which it refused to give, to which the defendant excepted. The instruction raised the question fairly, that irrespective of the fact whether the whistle was blown or not, the mere frightening of the team by the train, and thereby injuring the plaintiff, did not render the company liable. As the court took the view that sounding the whistle was not a compliance with the statute, which could be satisfied with nothing less than ringing the bell, it is difficult to see why this clause was stricken from the charge. The injury complained of in plaintiff's petition was, "that the locomotive ran so near to the horses in said buggy, and forced said horses to run back from the track of said railroad, and made them overset the buggy, throw out and injure the plaintiff."

This instruction confined the attention of the jury to the manner of the accident set up in the petition, and should have been given.

7. The duty imposed by the law on a traveler approaching a highway crossing of a railroad is well settled by the courts. In *Reeves v. Delaware Rld. Co.*, 30 Penn. St., 464, the court very emphatically hold of the duty of the traveler: "He is bound to *stop* and look out for trains, and may not rush heedlessly, nor remain unnecessarily on a spot over which the law allows engines of fearful power to be propelled by one of the most resistless agents in nature." This decision was followed in 49 Penn. St., 64, and 66 id., 33; and see 33 Ind., 45.

8. The 3d and 5th requests to charge the jury, raised the point that the positive testimony of unimpeached witnesses that the bell was rung and the whistle blown, and whose attention was directed thereto at the time, should outweigh the negative testimony of witnesses that they did not hear these signals, their attention not being directed to the matter at the time. On general principles this is law. It appeals to a common and well-known experience. It is also sustained by the authorities. 19 Ill., 499. Juries are so much inclined to find against a railroad corporation, that every principle of law which may tend to compel them to do justly, should be impressed upon them.

*C. B. Mason, W. A. Johnson,* and *W. W. Nevison,* for defendant in error:

1. The 6th instruction given is a general instruction applicable to this case. 45 Mo., 259. In the 7th instruction given by the court, the language is that of the statute: Gen. Stat., § 60, page 206; Laws 1871, page 134, § 64; and only embodies the duty of the railroad company, and its servants. 35 N.Y., 9; 19 Wis., 489; 29 N. Y., 390; 35 N. Y., 35. Negligence and gross negligence only differ in degree, if there is any difference in the current authorities, in negligence, whatever. In the absence of a statute requiring the ringing of a bell or blowing of a whistle, when approaching the crossing of a street or public highway, it might or might not be gross negligence in the company, as the jury might find in a given case, as a question of fact; but when it is the duty of the servants of the company by law to signal in a certain manner, the omission so to do makes the railroad company a wrongdoer, and it is not error to charge the jury that such omission is gross negligence. *U. P. Rly. Co. v. Rollins,* 5 Kas., 179, 181.

Instruction 8th, given by the court, is in conformity with the authorities directly in point: 46 Mo., 353; 3 Albany L. J., 312; 35 N. Y., 9. Instruction 9th is the law of the case, if the jury find that the defendant was guilty of gross negligence. 31 Miss., 156; Shear. & Redf. on Neg.

2. The striking-out of the words "and this whether the whistle was sounded at the distance of 80 rods or not," asked to be given by the defendant, was properly done. To have given the instruction as asked by the defendant below would have rendered the instructions in the charge of the court preceding this one, meaningless or an absurdity.

That the 2d instruction asked by defendant was not good, see 10 Rich., (S. C.,) 227; 1 Dil. Ct. Ct., 582. That the 3d instruction asked is not law, see *Lobenstein v. Pritchett*, 8 Kas., 213.

3. With reference to the 6th and 7th instructions asked by the defendant, we rely on the correctness of the charge of the court on the question of exemplary damages. We claim that there is no error in the instructions given by the court of which plaintiff in error can complain; on the contrary, the first four instructions given, taken in conjunction with all the charges to the jury in the case, when viewed by the standard of the latest decisions under similar statutes, are singularly favorable to plaintiff in error.

And, it seems to us, that a careful consideration of the instructions given, taken together, and the instructions refused, will show that no substantial error was committed to the prejudice of the railroad company.

4. The point claimed in the refusal of the court to send the jury back as requested, presents a question of practice, if anything, and appears to us a technicality rather than a material matter in the case. In the first place, before the introduction of evidence, the court announced what was the law as to special verdicts and special findings. Laws of 1870, page 173, § 7. And the record shows that "The defendant thereupon stated to the court, that it required the jury to find a special verdict in the action, embracing all the issuable facts therein." At the close of the evidence, argument of counsel, and instructions by the court, a paper was submitted to the jury, as follows: "The following paper is submitted to you, that you may find the facts in relation to each matter therein," and the court goes on to instruct the jury what they are to do in case the paper

is in exact accordance with their understanding of the testimony; but, if not in exact accordance, they are to make such findings as they considered sustained by the evidence on the points submitted. The jury then retired. Up to this time no complaint or exception is taken, or made, by the plaintiff in error to the instruction by the court. The jury next return with the paper into court, not as a special verdict, except signed as directed by the court in the case. The paper was not in exact accordance with their understanding of the evidence, and attached to those findings a general verdict. At this stage of the case, the defendant below moves the court to send the jury back, and reiterates the request made at the commencement of the trial, for a finding "on all the issuable facts." Now, we claim that the statute nowhere authorizes a special verdict "on all the issuable facts." The code uses no such terms. See § 7, Laws of 1870, page 173; Code, §§ 261 to 264, and §§ 285, 286, 287, 288. It was not error to refuse to send the jury back as requested. They had returned their findings and verdict, under the code. It was all they could do. They concluded by a general verdict, and as they were by the law bound, and there was no error. 6 Kas., 471; 29 Iowa, 14, 482.

The opinion of the court was delivered by

KINGMAN, C. J.: On the 22d of May 1871, the plaintiff in error ran a special excursion train over its road, southward, through the city of Garnett. On Third street in that city, near where that street crosses the railroad, the defendant in error was riding in a buggy drawn by two horses. The horses were frightened by the train, and in their fright turned around, and tipped out the driver and the defendant in error, whereby she was severely injured. For these injuries she brought an action, alleging negligence on the part of those having charge of the train, in the manner of running it, and in failing to give the necessary signals of its approach. The defense sought to establish the facts that the train was carefully and prudently run, and the signals properly and timely

sounded; and further, that the defendant in error was guilty of negligence in not taking reasonable care to observe the approach of the train, and thus contributed to the injury. On the admission of the testimony but two exceptions were made to the ruling of the court, and in these instances the ruling was so manifestly correct that no point is made thereon in the brief of plaintiff in error, and no further notice of them will be taken here. The other errors alleged are in the refusal of the court to order a special verdict upon the demand of the plaintiff in error, and in the instructions given and refused, and in overruling the motion for a new trial; and these will be considered in their order.

I. Plaintiff in error demanded a special verdict from the jury. The statute expressly gives this right. It is neither ambiguous, uncertain, nor open to construction. It is clearly the duty of the court to direct the jury to find a special

1. Special ver-
dicts; rights
of parties.

verdict when both or either party demands it: Laws 1870, ch. 87, § 7. No question of the convenience or inconvenience of such practice can have anything to do with the decision of the question. The right is absolute. We may doubt the wisdom of the law, but are not authorized to evade it. The refusal of the court to direct a special verdict compels this court to send the case back for a new trial. As the counsel for defendant in error insists that no exception was taken to the refusal, at the proper time, it is deemed advisable to state the facts as they appear on the record. At the commencement of the trial the plaintiff in error, in answer to a suggestion of the court, informed the court that it "required the jury to find a special verdict in the action embracing all the issuable facts." No refusal of the demand was then made or intimated, so that there was no occasion for an exception. The party had a right to believe that a right given him by law would be awarded by the court. When the testimony was all in, and before the argument, the demand was repeated. Then the court decided, that "the jury *may* find a special verdict upon such of the issuable facts presented by the counsel in writing, and may conclude

their findings by a general verdict." To this ruling the defendant "then and there excepted." Again, when the jury returned with the verdict the request to have them sent back with directions to bring in a special verdict was renewed, and the refusal to so order was excepted to. Thus speaks the record; and it is apparent that the plaintiff in error demanded and the court refused to direct a special verdict. The demand, though not in the language of the statute, was in such substantial conformity with it that there is no possibility of misunderstanding it. The code, § 285, defines what a special verdict is. The special findings of fact made in this case in response to written propositions submitted to the jury do not constitute a special verdict, and if they did, would not uphold a judgment.

II. The conclusion reached on the foregoing point renders it comparatively easy to dispose of the others, for in commenting upon instructions it is often more difficult to determine whether an instruction is misleading in a particular case than it is to decide whether it accurately lays down true principles of law. The charge of the court consisted of nine paragraphs; to the 6th, 7th, 8th, and 9th, the plaintiff in error excepted. The 6th charge is as follows:

"The jury should determine from all the evidence whether any agent, officer, servant, or employee of the defendant, whilst conducting, running, or managing any locomotive, car, or train of cars, failed to exercise the diligence, care, and foresight of a prudent man; and the absence or want of such diligence, care, and foresight, would constitute such negligence as would render the defendant liable."

This instruction would be correct if the negligence led to the injury complained of; and this is probably what was intended, and what the jury understood by it, as there was no 2. Negligence evidence tending to show negligence in any other of railway company. than this particular train at this time. The 7th instruction is intended to embrace the requirements of § 60, of ch. 23, Gen. Stat., but should be corrected so that if the whistle was sounded at least eighty rods from the street crossing, on the outside of the city limits, and was continuously

sounded till the city limits were reached, and then the bell was rung until the crossing of the street, then there was no negligence on account of signals. But the charge is open to a more serious objection. The failure to give the signal required by the section is negligence. The law has fixed the duty in exact terms. An omission of that duty is negligence; but the degree of negligence must depend on the facts of each case. When the court told the jury that such omission was *gross* negligence, it was error. Each case must depend upon the peculiar facts, and may be gross negligence, or simply *negligence* because the law makes it so. It should have been left to the jury to say in this case whether the omission was gross negligence or not. The 8th instruction is not inconsistent with the charge making it the duty of parties approaching a railway, to look out for danger, but is to be taken in connection with that part of the charge, and taken together the principles laid down are correct. The 9th instruction is to the effect, that if the injuries complained of were caused by gross negligence, and the jury so found, they might find exemplary damages. This is the law as settled by this court: *Malone v. Murphy*, 2 Kas., 250; *Wiley v. Keokuk*, 6 Kas., 94. But the negligence should be so gross as to amount to wantonness, to authorize exemplary damages. We do not care to enter into a discussion of the correct principle. It is fully discussed *pro* and *con* in the appendix to Mr. Sedgwick's treatise on the measure of damages. The authorities seem to be mostly one way, and those this court has seen proper to follow rather than theory.

The plaintiff in error asked six instructions, of which the first only was given, and that in a modified form. The modification consisting in striking out that portion of it that stated that it made no difference as to defendant's liability whether the whistle was sounded at the distance of 80 rods 3. Care and vigilance; degree required. from the crossing or not. This was properly stricken from the instruction. It was one of the real questions at issue, whether the whistle was sounded so as to put the plaintiff on her guard. The 2d instruction does

not specify any points or distances at which the required signals should be sounded, to escape from the charge of negligence; and for this reason, if for no other, was not law. The 3d and 5th instructions are as to the weight of evidence of certain kinds. As the court laid down the true rule in the 4th paragraph of its charge, it was not bound to repeat it. The 4th instruction asked is faulty in this, that it made it the duty of the driver of the carriage in which plaintiff was riding *to stop* and look up and down the track to see if there was a train approaching. This is requiring more of a traveler than any reported case to which we are referred demands. The railway and the street are equally highways. A legiti-

4. Travelers on highways and railroad operators. Vigilance.

mate use of either is a public right, and this right rests on the same basis in both. Parties are bound to care and diligence when using either, so that their use shall not work injury to others with the same rights. On the highway the traveler must use prudence, so as not to inflict injuries on others and to guard against injury from others. The same obligation rests upon the operators of a railway train. They must exercise a degree of care corresponding to the perils of such a mode of transportation. Persons crossing a railroad on a street or public highway are only exercising an undoubted right; but in doing so they must use the same care and vigilance for their safety, and the safety of persons running on the railroad, that the operators of the train use. The principles applicable to one are applicable to the other, and are as old as law. The traveler on the highway is no more bound to stop when he approaches a railroad, than the managers of the train are bound to stop when they approach a highway. It may be the imperative duty of either to stop when the conditions require it. The managers of a railway train, though they have a right to the use of the track, have no right to run it into a procession crossing the track on a highway, or into a crowd collected to extinguish a fire; and if they should do so knowingly, and without every effort to stop the train, would be guilty of culpable negligence. In most cases, as

the traveler on the highway can arrest his progress easier and quicker than the railway train, it would be his duty to stop on the approach of danger. But this obligation does not arise from the superior right of the railroad, but from the conditions of the parties. The duty of the train to stop in case of apprehended danger is just as strong and obligatory.

It is unnecessary to examine the other points made on a motion for a new trial, as the judgment must for the reasons given be reversed, and a new trial ordered.

All the Justices concurring.