## KANSAS PACIFIC RAILWAY CO. v. WILLIS KESSLER.

1. GROSS NEGLIGENCE; *Exemplary Damages.* Where the testimony discloses gross and wanton negligence on the part of the defendant, the jury may award exemplary damages, and an instruction to that effect is not error.

2. ———— *Expulsion of Passenger, from Railway Train.* Where it appears that prior to January 1st, the railway company had been in the habit of carrying passengers on its freight-trains, and that on that day a regulation went into effect prohibiting the carrying of passengers on such trains east of Brookville, but making no change as to such trains west thereof, and where it does not appear that any public notice was given of such change, and does affirmatively appear that the ticket agent at Bosland, one of its stations west of Brookville, received no notice thereof, and did not in fact know of it until the middle of March following, and then only as he heard it from a passing conductor, and that on the 2d of March he sold plaintiff a ticket to Salina, a station east of Brookville, and assured him that it was good to carry him there on a freight-train then approaching the station, and that plaintiff entered such train and rode without objection, or notice of the change of rule, until it had passed Brookville, when he was put off after dark by the conductor at a small station about half-way between Brookville and Salina, and where it appears from the testimony of the agent that he had been in the habit up to said 2d of March of selling passenger-tickets to be used on freight-trains east of Brookville, and from the testimony of the conductor that he had frequently put passengers off from his train, but had never had any trouble about it before; *held*, that a verdict of

eight hundred and twenty dollars, eight hundred dollars of which the jury specifically awarded as exemplary or punitive damages, would not be set aside by this court.

*Error from Saline District Court.*

KESSLER had judgment at November Term 1875, and the *Railway Company* brings the case here. No briefs on file.

*C. E. Bretherton*, and *C. A. Heller*, for plaintiff in error.

*J. G. Spivey*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action to recover damages for a wrongful expulsion from the train. The verdict and judg-

<span style="float:left">Exemplary<br>damages.</span> ment were for $820 — $20 of which the jury assessed for compensatory, and $800 as exemplary damages. It seems to be conceded by the plaintiff in error, that the former was proper; and the only question raised here is, whether the case was one for exemplary damages. And first, in this respect, are challenged the instructions. The court charged as follows:

"Now before you can allow this kind of damages at all, you must find that there was in this case on the part of the defendant, mingling in the transaction complained of, either fraud, malice, gross negligence, oppression, or violence. And if you shall so find *either of these*, you can allow for it. Gross negligence means, the want of slight diligence; and slight diligence means, the lack of that care and prudence in and about a transaction which persons of less than common prudence would use and exercise.

"But again, our supreme court has said that you must find that this negligence is not only gross, but wanton also. And wanton means, a licentious act by one person toward another, without regard to his rights, or again, it is a reckless disregard of another's rights."

The subject of exemplary damages has several times been passed upon in this court. In *Wiley v. Keokuk*, 6 Kas. 91, it is said: "Whenever the elements of fraud, malice, gross negligence, or oppression, mingle in the controversy, the law allows the jury to give what is called exemplary or vindictive

damages." This case is followed in *Sawyer v. Sauer*, 10 Kas. 466. Again, in *L. L. & G. Rld. Co. v. Rice*, 10 Kas. 426, where it is said: "The ninth instruction is to the effect, that if the injuries complained of were caused by gross negligence, and the jury so found, they might find exemplary damages. This is the law as settled by this court. *Malone v. Murphy*, 2 Kas. 250; *Wiley v. Keokuk*, 6 Kas. 94. But the negligence should be so gross as to amount to wantonness, to authorize exemplary damages." See also, *M. K. & T. Rly. Co. v. Weaver*, 16 Kas. 456.

Counsel for the plaintiff in error criticise the word "licentious," as inapt, in this connection. Even if this be conceded, we do not think it at all misleading. In the instructions given, the court' followed the law as heretofore laid down by this court. We see no reason to change the views hitherto expressed by us, and must therefore sustain the instructions.

It is claimed that the supreme court of the United States, in the cases cited, of *Milwaukee Rld. Co. v. Arms*, 1 Otto, 489, and *Western Union Tel. Co. v. Eyster*, 1 Otto, 495, has laid down a more stringent rule, and limits the recovery of exemplary damages to cases of intentional wrong, or its equivalent. Thus, in the first case, speaking through Mr. Justice Davis, it says: "Gross negligence is a relative term. It is doubtless to be understood as meaning a greater want of care than is implied by the term ordinary negligence. But after all, it means the absence of the care that was requisite under the circumstances. In this sense, the collision in controversy was the result of gross negligence, because the employés of the company did not use the care that was required to avert the accident. But the absence of this care, whether called gross, or ordinary, did not authorize the jury to visit the company with damages beyond the limit of compensation for the injury inflicted. To do this, there must have been some willful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences." And in

Gross negligence, discussed.

the other, "There was an act of negligence entitling the plaintiff to compensatory damages; but there was nothing to authorize the jury to consider this omission as willful; on the contrary, the evidence rebuts every presumption that there was intentional wrong." It may be, after all, that the difference is only one of definitions, and springs from an evident inclination of that court to ignore degrees of negligence as defined by most law-writers and courts. But be that as it may, we adhere to the prior rulings of this court, and hold that a case which discloses, on the part of the wrongdoer, negligence which is gross and wanton, is one in which the jury may award exemplary damages. The law, by tolerating this kind of punishment by way of damages, would check not merely intentional wrong, but gross carelessness.

We do not see that plaintiff in error was prejudiced by the failure to submit to the jury the first six of the questions prepared by it. The questions that were submitted brought out all the facts material in the case. Neither do we think $800 an excessive allowance for exemplary damages. The purpose of such damages being partially at least punishment to the wrongdoer, and to deter from similar wrongs, it must not be expected that they be merely commensurate with the damages actually done. Not that we would be understood as holding that even in a case properly calling for exemplary damages, the action of the jury is conclusive and beyond supervision. But simply this appears to us, that if in this case exemplary damages are proper, $800 therefor is not so large an allowance as to justify any interference with the verdict.

This brings us to the last, and to our minds really the only serious question; and that is, Was this case one in which exemplary damages were proper? Was there such gross negligence on the part of the plaintiff in error, such wanton and reckless disregard of the rights of the defendant in error, as Statement of facts. to justify mulcting it in any more than the actual damages its wrongdoing caused? The case stated generally is as follows: The plaintiff below, defen-

dant in error, desiring to go from Bosland, some forty miles west, of Salina, to that town, where he resided, asked the ticket and freight agent (himself having some doubts about the matter,) if he could ride to Salina on a freight-train then entering Bosland depot. The agent told him he could, and he bought a ticket, and started. The agent had misinformed him. The regulations of the company did not allow passengers to ride on that freight-train beyond Brookville, which was the end of that division of the road, where a change of cabooses (the only accommodation for passengers,) and conductors, was made; and at Bavaria, about half way between Brookville and Salina, the new conductor put him off by force, as he refused to go without. According to the plaintiff's testimony, nothing was said about these regulations until after the train had started from Brookville, while according to the defendant's evidence the conductor notified him before, and told him he could not ride on the train. It was early in the evening when Bavaria was reached and the plaintiff expelled from the cars. The regulations prohibiting passengers from riding upon freight-trains east of Brookville, were made on January 1st 1875, and this transaction took place on the 2d of March thereafter. The ticket-agent who sold the ticket to Kessler, had not been informed of these regulations, in fact knew nothing of them until the middle of March, when he was told by a conductor that such had been made. Prior to the 1st of January 1875, passengers were carried in freight-trains east, as well as west, of Brookville; and up to the 2d of March the agent at Bosland, as he himself testified, had been in the habit of selling tickets to passengers for destinations east of Brookville by freight-trains. The conductor who put Kessler off the train. testified, that "the present rule came in force first January 1875. Conductors all obeyed it. I have put persons off train frequently. I never had any trouble before." In reference to the expulsion, Kessler did not claim that any insults, indignity, or unnecessary violence accompanied it, though from the testimony of a friend traveling with him it would seem that the conductor

was both rough and profane. Upon these facts, can a finding of gross negligence and violence be sustained? With much hesitation we are constrained to answer this question in the affirmative. It appears that prior to January 1st, the defendant had been in the habit of carrying passengers on freight-trains both east and west of Brookville. On that date a new regulation went into effect, prohibiting the carrying of passengers on such trains east of Brookville, but making no change west thereof. Doubtless the company had power to make and enforce such regulations. Doubtless there were good reasons for them, and for making the distinction between the distances east and west of Brookville, though nothing of the kind is disclosed by the record, and it there appears as simply an arbitrary rule. Having made such regulations, the first duty was to give public notice of them, and especially to see that the agents who by the sale of tickets were to make contracts with passengers for transportation, were fully informed of them. And such notice should have been given so fully, and so long before the regulations were to go into effect, as to make it reasonably certain that no passenger in the exercise of ordinary diligence would have been caught in such a predicament as the plaintiff in this case was. On the contrary, it does not appear that any public notice of the change was given. It does affirmatively appear that notice was given to the ticket-agent at Bosland, and that he knew nothing of the change for two months and-a-half after it was made, and then only as he heard it from the conductor of a passing train. Nor does it appear that this was the only instance. The agent says he was in the habit of selling tickets for such trains for over two months after the change; and it would seem from the conductor's testimony that he was in the habit during the same time of putting passengers off from his train. It doubtless occurred to the jury, that it was time that such habits were changed on the part of one or other of these agents of the defendant, and that their continuance for such length of time indicated gross negligence, a reckless indifference to the

*Duty of railway company.*

rights of passengers. A single instance would indicate negligence. Repeated instances imply something more. Such a rule ought also to be enforced by *preventing* passengers from taking passage on a freight-train, rather than by *putting them off* after half the journey is completed. In this matter we know there is a conflict in the testimony, but the plaintiff's testimony shows no objection to his riding in that train until after it had started. It seems to us therefore, after a careful review of the evidence, and in matters of conflict giving full weight to plaintiff's testimony, that it cannot be said that there was absolutely no case for exemplary damages, nothing which would justify a jury in awarding such damages; and therefore, although not impressed with this as a case of very aggravated wrong, we are constrained to affirm the judgment.

All the Justices concurring.