## GEORGE W. BROWN v. THE KANSAS CITY, FORT SCOTT & GULF RAILROAD COMPANY.

1. TICKETS *to be Procured Before Passage; Reasonable Rule.* Public carriers of passengers have the right to make such reasonable rules and regulations as will tend to the better protection of their patrons and their own general convenience; and a rule that requires passengers to procure tickets before taking passage upon freight trains is a reasonable regulation.

2. ———— *Ticket Office to be Open.* Where such a regulation is adopted by a railroad company, such rule imposes upon the company the necessity of having its ticket offices open a sufficient length of time before the departure of trains to enable passengers to procure tickets.

3. ———— *Right to Pay Fare and Ride.* When such a regulation is adopted by a railroad company, and a passenger, desiring to take passage upon its freight train, endeavors to procure a ticket, but by reason of the ticket office being closed he is unable to do so, he has the right to travel on such train by paying or offering to pay the usual fare.

4. COMPETENT TESTIMONY, *Error in Excluding.* In an action to recover damages for having been put off a train, where the railroad company claims that it is not liable by reason of the failure of the plain-

tiff to procure a ticket in conformity with its rules, which require passengers to procure tickets before entering freight trains; and the plaintiff, for the purpose of showing that the defendant's freight trains carried passengers for hire, and that no rule was enforced by the defendant requiring the purchase of tickets before entering its trains, offered to prove by four witnesses that said witnesses had on a number of occasions taken passage on defendant's freight trains without first procuring tickets, and that they paid their fares to the conductors of said trains, which testimony, on the objection of the defendant, was excluded: *Held*, That said testimony was competent, and its exclusion error.

*Error from Johnson District Court.*

ACTION by *Brown* against *The Railroad Company*, to recover damages for the unlawful expulsion of the plaintiff from a freight train on defendant's railroad, on the afternoon of the 6th day of November, 1885. The plaintiff, being at Kansas City, and desiring to return to his home at Lenexa, a station on the defendant's road, in Johnson county, Kansas, for the purpose of procuring a ticket for transportation to Lenexa went to the union depot at Kansas City at about 1:30 P. M. The time for the starting of the train from the yards, about half a mile from the union depot, was at 2 o'clock. On arriving at the union depot plaintiff found the ticket office closed, and was for that reason unable to procure a ticket. He went down to the yard and boarded a freight train which was about ready to start. He received no notice not to go on board the train, and had no knowledge of any regulation of the company requiring passengers to procure tickets before entering freight trains. The company had a regulation which required passengers to purchase tickets before taking passage upon any of its freight trains. The train started from the yard about five minutes after the plaintiff reached the train, and when the train was about half-way between Kansas City and Rosedale, the first station out from Kansas City, the conductor came around and demanded a ticket of the plaintiff, who informed him that he had none, and also the reasons why he did not procure one, and then offered to pay his fare from Kansas City to Lenexa, which the conductor refused to accept,

and informed plaintiff that he could not ride on the train with-
out procuring a ticket.   Before reaching Rosedale the plain-
tiff climbed upon the top of the cars and went forward to the
front end of the train in order that he might have more time
in which to reach the depot and procure a ticket.   He got off
and started for the depot, but the train immediately pulled
out, and, as it passed, the plaintiff again ·boarded the train.
Shortly afterward the conductor called upon him for his ticket,
and was again informed that plaintiff had no ticket; that he
had no opportunity or time at Rosedale to purchase one, and
he again offered to pay his fare, which was refused.   When
the train reached Merriam, plaintiff went to the depot and
purchased a ticket from Merriam to Lenexa, and as he started
for the train he met the conductor at the front end of the
train, who inquired whether he had procured a ticket.   Plain-
tiff told him that he had from there to Lenexa, and also that
he would pay his fare from Kansas City to the station where
they then were.   The conductor said that he could not ride
until he procured a ticket back from there to Kansas City,
and without giving plaintiff time to purchase a ticket back to
Kansas City, immediately signaled the engineer to go ahead,
and as the train moved off, plaintiff boarded one of the flat-
cars of the train.   The conductor caused the train to stop, and
required the plaintiff to get off, which he did.   No other train
was due at that station going in the direction of Lenexa until
after dark that night.   Plaintiff was in poor health at the
time, and had been advised not to expose himself after night,
and for that reason he walked home, a distance of five miles,
and in consequence of which plaintiff was afterward laid up
for some two weeks.

At the conclusion of the evidence on the part of the plain-
tiff, the defendant filed a demurrer thereto, for the reason that
the evidence did not show a cause of action in favor of the
plaintiff and against the defendant.   On June 2, 1886, this
demurrer was sustained, and judgment rendered against the
plaintiff for $132 costs.   To reverse this ruling and judg-
ment, plaintiff brings the case here.

*A. Smith Devenney,* for plaintiff in error.

*Wallace Pratt,* and *Chas. W. Blair,* for defendant in error.

Opinion by CLOGSTON, C.: The first and principal or material question in this case is, did the relation of passenger and carrier exist between the parties? for if that relation did exist, then the learned court committed error in sustaining the demurrer to the plaintiff's evidence. Before a person can claim the rights of a passenger in a public conveyance, he must show that all the reasonable regulations and restrictions known to him, which the carrier has thrown around its business for the safety of the passenger or the convenience of the carrier, have been complied with; and if not complied with, then a good reason must be shown for a non-compliance, and the reason for this non-compliance must be because of some act, omission or fault of the carrier; for it is well established that the carrier has a right to make such reasonable rules and regulations as will tend to the better protection of its patrons, and to the greater convenience of itself; and the rule that requires passengers to procure tickets before taking passage upon freight trains, is a reasonable regulation. (*Railway Co. v. Rinard,* 46 Ind. 293; *St. L. & S. E. Rly. Co. v. Myrtle,* 51 id. 566; *I. C. Rld. Co. v. Johnson,* 67 Ill. 312; *K. P. Rly. Co. v. Kessler,* 18 Kas. 528.) In this case there is no dispute but that the defendant had adopted a rule that required passengers to procure tickets before taking passage upon freight trains, and that the plaintiff did not procure a ticket before taking passage. The plaintiff, to avoid this rule, showed that it was not complied with on his part: first, because he had no knowledge of the existence of such a rule until informed by the conductor when half-way between Kansas City and Rosedale; second, that he attempted to procure a ticket at the union depot ticket office in Kansas City, and that such ticket office was the place where he had been in the habit of purchasing tickets over the defendant's line, and the only office or place that he knew of where tickets could be

<small>1. Tickets to be procured before passage; reasonable rule.</small>

procured.   This evidence was not disputed; on the contrary, it was admitted by the demurrer.   Where a railroad company desires to enforce such a regulation it must afford reasonable facilities to passengers to comply therewith.   The plaintiff showed in addition to this, that when he reached the yard where the train was, he entered the caboose or way-car, and no objection was made to his entering, and no one informed him of the rules of the company.   Then by what fault of the plaintiff can it be said that he disregarded the defendant's rule?   But on the other hand, cannot it be said that on account of the failure of the defendant in not keeping its ticket office open, he was prevented from complying with the rules?   Under such circumstances as these plaintiff was not a trespasser, but was on the train rightfully as a passenger, and defendant could accept his fare or carry him free.   This being true, was there afterward opportunity given the plaintiff by the company to purchase a ticket or comply with the rules?   At Rosedale he made an effort to do so, but failed, and this failure was owing to the fact that the train did not stop long enough at that station for him to procure a ticket.   At Merriam he succeeded in purchasing a ticket from there to Lenexa, his destination, and because he did not purchase a ticket from Merriam to Kansas City he was expelled from the train.   There is no evidence that such a ticket would have been received; but even if it would, still no information had been given the plaintiff in time to procure one, and the only information he had on the subject was when he presented his ticket from there to Lenexa, and offered to pay his fare back to Kansas City, at which time the conductor asked him, "why he did not purchase a ticket back to Kansas City?"   This was just as the train was again starting, and there was then no chance to return to the office and purchase such a ticket.   This not being the fault of the plaintiff, he would still have the right to his passage on that train, and all the rights of a passenger.   He was willing to comply with all the regulations that he knew of, if an opportunity was given him to do so.   This was all that it was

2. Ticket office to be open.

3. Right to pay fare and ride.

necessary for him to do to place himself in the relation of passenger to the defendant.

Defendant insists that, as plaintiff was informed of this rule at and before he reached Rosedale, and after being so informed he left the train, that even if he had been a passenger up to that time, by leaving the train he lost his right to reënter without a ticket. We think this claim is not well taken. He left the car, it is true, and reëntered with knowledge of the rules; but he left it with the intention of complying with this regulation. It would seem, too, to be a strange doctrine that because of an honest attempt to comply with defendant's regulations, which theretofore he was ignorant of, he would forfeit all right he then possessed to be treated as a passenger; in fact, had he not made an attempt to comply with the rules the conductor would have been justified in stopping the train and treating him as a trespasser by expelling him therefrom. Then how can the defendant be heard to say that he had forfeited his right to be carried on that train? This question has recently been settled in other states. In *St. L. & S. E. Rld. Co. v. Myrtle*, 51 Ind. 574, it was said:

"But such a regulation imposed upon the company the necessity of having the ticket office open a sufficient length of time before the departure of trains to enable passengers to procure tickets. Again, the appellant tried to procure a ticket, but could not do so in consequence of the absence of the agent. He had a right to travel on the train in question without a ticket, by paying the ordinary fare, which he offered to do."

In that case the conductor of the train informed the appellant before he entered the train that he could only ride thereon by first procuring a ticket, and he was put off the train before it left the yard. (Also, see *I. C. Rld. Co. v. Sutton*, 53 Ill. 399; *I. C. Rld. Co. v. Johnson*, 67 id. 312; *Lucas v. M. & St. P. Rly. Co.*, 33 Wis. 41; *Chase v. N. Y. C. Rld. Co.*, 26 N. Y. 523; *Stoner v. Pa. Rld. Co.*, 98 Ind. 388; *K. P. Rly. Co. v. Kessler*, 18 Kas. 529.)

Again, the plaintiff insists that he did not know of the rule requiring a procurement of a ticket before taking passage on

the train, and that not having been so informed he was rightfully thereon, and was entitled to remain until an opportunity to comply was furnished. A passenger is not supposed to know of such a rule. He may know that passengers are carried and not know under what conditions or circumstances, and until informed he is not a trespasser. (*Lucas v. M. & St. P. Rld. Co.*, 33 Wis. 54; *Dunn v. Grand Trunk Rly. Co.*, 58 Me. 187; *A. T. & S. F. Rld. Co. v. Plunkett*, 25 Kas. 188.)

Plaintiff also contends that the court erred in excluding the evidence of some four witnesses tending to show that this rule

4. Competent testimony, error in excluding.

of the company was not enforced on its freight trains. This evidence was competent for two purposes: first, to show that freight trains on defendant's road carried passengers for hire; second, to show that no rule was in force requiring the purchase of tickets before entering the train. True, this evidence might not be sufficient to establish the custom when the evidence was given; but if not, then it was the province of the court to so instruct the jury and inform them what evidence it would require to show such custom and disregard of the rules in question. (*Stoner v. Pa. Co.*, 98 Pa. 381; *Lucas v. M. & St. P. Rld. Co.*, 33 Wis. 60; *Smith v. Miller*, 52 N. Y. 549; *St. J. & W. Rld. Co. v. Wheeler*, 35 Kas. 185.)

It is recommended that the judgment of the court below be reversed, and the cause be remanded for further proceedings in accordance with the views herein expressed.

By the Court: It is so ordered.

VALENTINE, J., and JOHNSTON, J., concurring.

HORTON, C. J., dissenting to the declaration of law as applied to this case.