## D. M. CLARK v. JOHN BALDWIN.

1. MALICIOUS PROSECUTION; *Insufficient Defense.*   In an action to recover for a malicious prosecution and false imprisonment, the defense was, that the defendant acted upon the advice of counsel.   As it did not appear from the whole testimony that defendant had stated all the facts to his counsel, a verdict for plaintiff will not be set aside as against the evidence.

2. DAMAGES, *Not Excessive.*   In such a case the damages were assessed at one hundred dollars.   The evidence showed that the plaintiff incurred expenses of twenty dollars, was wrongly accused of a felony, was confined in jail nearly three full days, and contracted a severe cold while imprisoned, from the consequence of which he suffered ill-health.   *Held,* That the damages are not excessive; and further, *held,* that if the jury had returned a much greater sum as their verdict in the case, we would not feel at liberty to interfere.

### *Error from Franklin District Court.*

JULY 30th, 1879, defendant in error ( plaintiff below) filed in the district court of Franklin county the following petition (court and title omitted):

"Plaintiff, John Baldwin, for cause of action against the defendant, David M. Clark, states the following facts: That on or about the 21st day of December, 1878, at the said county of Franklin, the defendant maliciously, unlawfully

and without any probable cause, caused the plaintiff to be arrested by then and there making and filing before S. Devore, one of the justices of the peace of said county, then having jurisdiction in that behalf, an affidavit duly sworn to by defendant, charging the plaintiff with having unlawfully and feloniously, in the county aforesaid, on or about the 1st day of December, 1878, falsely represented himself to be the person to whom was addressed and to whom belonged a certain package of money of the value of one hundred dollars, then and there in the possession and control of the United States express company, and by means of such false personation and pretense, feloniously obtained the said money; when in truth and in fact he was not such person as he assumed to be, and not the owner, or otherwise entitled to such money; and that he then and there feloniously converted the same to his own use; that upon such false charge so made, the defendant maliciously caused a warrant to be issued by said justice for the apprehension and arrest of the plaintiff, and to bring him before said justice to answer said charge and to be dealt with according to law. Thereupon the defendant unlawfully, maliciously, and without any probable cause therefor, caused the plaintiff to be arrested on such warrant and imprisoned, and kept and detained in the common jail of said county for a long space of time, to wit, for ten days, and did then and there assault, beat and imprison the plaintiff, maliciously and without cause; that afterward, about the — day of January, 1879, the defendant having maliciously caused the plaintiff to be brought before said justice under custody under said warrant, to answer to said charge, the county attorney of said county duly moved to dismiss the prosecution, for the reason that it was unfounded and without just cause. Thereupon the justice rendered final judgment in favor of the plaintiff, discharging him from custody, and of and from said prosecution, and that he go acquit.

"Plaintiff avers that the said prosecution was wholly unfounded and without cause, and was begun and carried on by the defendant from malice toward the plaintiff and to wrong and injure him, the defendant well knowing at and before the commencement of said action that the plaintiff was innocent of said charge, and that the same was without cause and groundless. And plaintiff avers that by reason of the wrongs aforesaid, he was put to great trouble and expense in and about

his defense to said prosecution, and was compelled to and did pay out a large sum of money, to wit, $100, for counsel fees and other necessary expenses therein; that he was subjected to loss of health and suffering by said imprisonment, whereby he was compelled to pay and did pay a large sum of money, to wit, $50, for medical attendance and services, and was greatly injured in his business and reputation, and otherwise damaged by reason of said several wrongs, all to his damage of $1,000. Wherefore plaintiff prays judgment against said defendant for $1,000, his damages so as aforesaid sustained, and for costs."

August 23d, 1879, plaintiff in error (defendant below) filed this answer (court and title omitted):

"That on or about the 1st day of December, 1878, the said defendant being in the employ and the agent of the city of Ottawa, Kansas, for the United States express company, an incorporated company doing business as a common carrier, by virtue of said agency and employment there came into the possession of the defendant a valuable package, said to contain the sum of one hundred and seventy-five dollars in money, which package was directed to John Baldwin, Ottawa, Kansas, as the owner, and was feloniously and fraudulently obtained from defendant by some person unknown, falsely and fraudulently personating the true owner of said package to said defendant; that defendant alleges that as soon thereafter as he was aware of the perpetration of said crime as aforesaid, by some person unknown, and being informed of the presence of the plaintiff in the city of Ottawa aforesaid, at the time the package was feloniously obtained, and defendant unacquainted with plaintiff and plaintiff unknown to defendant, defendant honestly believing that the plaintiff had committed said felony, thereupon made the affidavit referred to in plaintiff's petition, and caused the arrest of the plaintiff on the charge stated in the affidavit set forth. Defendant alleges that he was under an honest mistake, and as soon as aware of the truth of the transaction he caused the plaintiff's discharge from custody.

"And further answering, defendant denies each and every allegation in the petition of plaintiff not herein specifically set forth and admitted in the first count of the answer, and asks to be dismissed."

A reply was filed thereto, and at the January Term, 1880,

the case was tried. The jury, failing to agree, were discharged, and the cause continued. At the May Term, 1880, the case came on for hearing before the court, with a jury. On the trial defendant testified:

"That in December and November, 1878, he was the agent of the United States express company, at Ottawa, Kansas; that about November 28, 1878, he received as express agent a package of money, $175, marked John Baldwin; that about December 1, 1878, he delivered the package to some person who represented himself to be the John Baldwin to whom the package belonged. About December 20, F. J. Baldwin claimed that a package of money should be at the office for his father, John Baldwin. Upon examining his books he found that some person, representing himself to be John Baldwin, had got the package and had signed a receipt for it. Becoming satisfied that the owner of the package had not got it, he set about finding who had got it. At this time he could not recollect who had identified the party that had obtained the package. After a careful search he could find only one John Baldwin living in the county, except the owner of the package, and he learned from J. E. Parkinson, a man who drove the stage between Ottawa and Pomona, that this John Baldwin lived at Pomona, and he, Parkinson, had seen him coming to Ottawa near December 1; that Parkinson told him he knew him well, and that he was a man of thriftless habits; that he did not know how he made a living; that he lived on his father-in-law's farm and did not do much of anything for a living, and that he thought if Baldwin had got the package of money by mistake he was the kind of a man to keep it; that he went to the banks to find if they had the signature of this John Baldwin, but could not find it, and he never compared his signature with that on his books; that he also talked with several business men about him, but none of them knew him, except Sanford Topping, who told him that he had known Baldwin for some time, and from the conversation with him, he (Clark) was led to believe that Baldwin was just such a man as would keep the package if he got it into his possession; that Parkinson, the stage driver, afterward told him the same day that the time he had seen Baldwin coming to Ottawa he was in a wagon, coming towards Ottawa; that he then laid all the facts he had heard from Parkinson and Topping before his brother, W. H. Clark, an attorney, and stated to him the

fact of the loss of the package, and he advised him to have Baldwin arrested, and drew up the affidavit for a warrant on which Baldwin was arrested, and advised him to have a warrant issued, which he did. This step he took alone upon the advice and under the direction of W. H. Clark, attorney. Before the time set for the examination, he became satisfied that he had made a mistake, and requested the county attorney to dismiss the case. At the time he had the warrant issued he acted in good faith, and supposed the advice given was all right and proper; that until after his arrest he had never seen this John Baldwin, and had never heard of him until the day before his arrest; that after Baldwin was discharged, he demanded damage from him on account of his arrest, when he told him he could not pay him anything; that he had paid the $175 he had lost, the costs of the prosecution, some $35, but that if he was out any money he would pay him, and offered to pay his attorney-fee; he declined his offer, and said he would make him (Clark) pay him big damages, and afterward, when he became abusive, that he ordered him to leave; that he did not know F. J. Baldwin until December 20th, and had not to his knowledge ever seen him before, and had no recollection of his ever asking for any express package before that day; that the practice was to give strangers an evasive answer when they inquired for money packages, and that he did this under orders from the express company; that he had unknown persons identified when they got packages, but did not take their names; that he paid to John Baldwin, the owner of the package, the $175 and interest; that S. Topping did not in the conversation he had with him tell him that he considered John Baldwin all straight and right; that he has never found the person who got the $175 package, nor has it ever been returned to him."

The jury returned a verdict for the plaintiff for $100. Judgment was rendered accordingly, and defendant brings the case here.

*C. B. Mason*, and *W. H. Clark*, for plaintiff in error:

The main facts in the case are not disputed. The testimony of plaintiff in error and of W. H. Clark is uncontradicted. The amount of damages allowed by the jury is excessive. There is no express malice shown. There must

be proof of want of probable cause and proof of malice. Proof of one in the absence of the other is not sufficient. If a party lays the facts fully and fairly before counsel and acts in good faith upon the opinion given him by the counsel, however erroneous, it is sufficient evidence of probable cause. (6 Barb. 83; 6 Rep. 269; 25 Pa. St. 275; 16 Gray, 381; 22 Kas. 105.)

*A. W. Benson,* for defendant in error:

The questions of malice and want of probable cause were properly before the jury. (3 E. D. Smith, 255; 12 Conn. 219–231; 20 Ohio, 119; 20 How. Pr. 478.)

Legal advice to be available as a defense in a case like this must have been given after a full and fair statement of all the facts of which the prosecutor had knowledge, or that he might have ascertained by reasonable diligence; and it must have been acted upon honestly. If it does not induce an honest belief that the party has probable cause, it will not avail as a defense. (20 Ohio, 119; 12 Conn. 230; 37 How. Pr. 289.)

The opinion of the court was delivered by

HORTON, C. J.: Two objections are urged against the judgment. One is, that the evidence is insufficient to justify the verdict; the other is, that the damages allowed by the jury are excessive.

Of these in their order. It was said by Mr. Justice VALENTINE, speaking for the court, in *Dolbe v. Norton,* 22 Kas. 105, that "where a person acting in good faith, and under the advice of counsel learned in the law, mistakenly institutes a prosecution against another person who is not liable, and the prosecution fails, the prosecutor does not thereby render himself liable to an action for malicious prosecution, or to any other action." And plaintiff in error now insists under this principle, that as all the steps taken by him were upon the advice and direction of his counsel, and as the testimony

upon this point was not disputed or contradicted, the verdict ought to have been given in his favor.

Underlying the question of the advice of counsel as enunciated in *Dolbe v. Norton*, supra, is the further principle, that such advice, to relieve liability, must have been given upon a full and fair statement of the case. Where the prosecutor does not state the whole facts of his case to his counsel he is not acting in good faith, and the advice is no protection to him. Plaintiff in error testified:

"I talked with several business men about him [John Baldwin], but none of them knew him except Sanford Topping, who told me that he had known Baldwin for some time; and from the conversation with him I was led to believe that Baldwin was just such a man as would keep the package if he had got it into his possession. . . . I then laid all the facts I had heard from —— and Topping before my brother, Wm. H. Clark, an attorney, and stated to him the fact of the loss of the package."

Wm. H. Clark testified, among other matters:

"That he was an attorney; that he had been in practice for fourteen years in Kansas; that plaintiff in error stated to him the fact of the loss of the express package; and that he had learned about John Baldwin living at Pomona, and what J. E. Parkinson, the stage driver, and Sanford Topping had told him, as he [plaintiff in error] had testified to in this case."

From this evidence it is clear that Wm. H. Clark was led to believe from the statements of the plaintiff in error that he had learned from Sanford Topping that Baldwin was a bad man, and that he was just such a man as would keep a package of money, if he got it by mistake into his possession. The truth is, Sanford Topping, according to his evidence, gave to Baldwin such a good character in his conversation with plaintiff in error, before the prosecution was begun, that in view of the meager evidence against Baldwin, we might more appropriately say, in view of the scanty suspicion against him, Topping's opinion and knowledge of Baldwin ought to have been fairly stated to counsel, to be considered

by him along with the statements and opinions of the stage driver. Topping testified he had a conversation with Clark before the prosecution, and said to Clark: "He had known John Baldwin for some time, and so far as he knew he was a straight, honest man, and was all right; that Clark asked him if Baldwin got an express package of $175, by mistake, if he thought he would return it, and he told him he thought he would." Plaintiff in error's belief in Baldwin's guilt rested upon the fact that the latter lived in Franklin county at the time the fraud was practiced upon him ; that his name happened to be John Baldwin, and the statement of the stage driver that he had seen Baldwin coming to Ottawa about December 1st, and the opinion of the stage driver that he was a man of thriftless habits. The good opinion in which Baldwin was held by so prominent and respected a citizen as Sanford Topping was therefore of importance. It would have at least overcome the opinion of the stage driver, who had less acquaintance with Baldwin than Topping; and if the opinion of the stage driver was given to counsel, the opinion of Topping ought to have been given also. It is true that there is a conflict between Topping and Clark as to the conversation between them before the prosecution; but the jury were the judges of the credibility of the witnesses and of the facts, and we must assume that they relied upon the evidence of Topping. It is quite likely they supposed, as Topping was not an interested party in the action, it was the safest to take his recollection as correct. Between witnesses equally credible and having equal means of information, the evidence of a party in no way interested in the result of the action is generally the best guide for the jury, when the evidence of such witnesses conflicts. The contradiction between Topping and Clark fully shows, if Topping is to be credited, that Topping was incorrectly reported to counsel; therefore, that plaintiff in error did not state the whole facts of his case to his counsel. The jury, upon the whole evidence, must have come to this conclusion, and if they did, the defense of advice of counsel utterly failed. If

statements to counsel are not fairly made, the advice given will be no protection to a defendant for the wrongful prosecution of a plaintiff.

The damages assessed were only $100. We cannot hold them excessive. Indeed, if the jury had returned a much larger verdict, we would not be at liberty to interfere on account merely of the assessment of damages. The plaintiff, under all the circumstances, may congratulate himself for not being mulcted in a greater sum. Even in assessing compensation for the injury sustained, the jury were authorized to estimate actual expenses, "injury to feelings, mental anguish, and tarnished honor." (*Malone v. Murphy*, 2 Kas. 250.) As the evidence showed the defendant in error was falsely accused of a felony, was compelled to incur actual expenses of $20, was in jail nearly three full days, contracted a severe cold while imprisoned, and suffered ill-health in consequence, we regard one hundred dollars very reasonable.

The judgment of the district court must be affirmed.

All the Justices concurring.