THE KANSAS PACIFIC RAILWAY COMPANY V. LYMAN
RICHARDSON.

1. QUESTION OF FACT, *for a Jury; Finding, Sustained.* Where the plaintiff
testified that as he approached, with his wagon and team, a railroad cross-
ing of a public street in the city of Topeka, adjoining the passenger
depot of the railway company, he looked to the west, (the direction from
which the train came,) and all he saw was a large pile of lumber, and
didn't hear any bell or whistle; and a witness stated that he was ten or
fifteen feet from the depot, but heard no signals until the collision, and
would have heard them if any had been given; and four other witnesses,
who were present, testified that they did not hear the whistle sounded
or the bell rung until the instant of the collision; and a passenger on the
train and in a car next to the rear one stated that he didn't hear any
alarm; and on the part of the defense, the fireman and engineer testi-
fied that they whistled for station above the tank 300 or 400 yards west
of the crossing, and rang the bell continuously from the tank until the
train stopped; and five other witnesses stated that they heard the whistle
sounded 300 or 400 yards west of the crossing, and the ringing of the
bell as the train came in, *held*, that there was a sufficient conflict of evi-
dence to raise a question of fact whether proper and timely signals were
given, and the trial court was justified in submitting the evidence to the
jury for their consideration. *Held, further*, That there was evidence
sufficient to sustain the finding of the jury that proper signals of the
approach of the train to the crossing were not given.

2. JURY, *Province of.* Where the evidence on a question of negligence is
doubtful and presents qualifying circumstances, and the inferences to be
drawn from the facts are uncertain, it is the province of the jury to de-
cide.

3. CONTRIBUTORY NEGLIGENCE, *Question of, for a Jury.* Where a person,
as he approached a railroad crossing at the main thoroughfare of a city
with his team and wagon, looked west, (the direction from which the
train afterward came,) saw only a pile of lumber, and heard no bell or
whistle, then looked ahead, saw the street clear and attempted to drive
across, then tried to pull his team around to avoid the coming train, but
too late to prevent a collision, and evidence is produced tending to prove
that the train was coming in at too great a rate of speed, and that no
timely signals of warning of the coming of the train were given, but
some witnesses testified that they hallooed to him to stop as the train was
coming, and one witness stated that he took off his hat at him and told
him the train was coming, and such person testified, "He didn't hear
anybody call," *held*, that it will be left to the jury to say whether such
person was guilty of contributory negligence. In such a case, and under
such circumstances, the question of negligence or want of proper care is

a matter of ordinary observation and experience of the conduct of men, and the judgment of a jury ought to control.

4. No FLAGMAN at *Railroad Crossing.* In an action by a plaintiff for personal injuries against a railroad company, it was averred in the petition that the injuries were caused by the neglect of the company in crossing the public street of the city with a locomotive and train of cars at a very swift, rapid, dangerous and reckless rate of speed, and without giving any warning of the approach of the locomotive and cars by sounding a whistle or ringing a bell, and that the view of the approach of the locomotive and cars was obstructed by cars standing on the track and by lumber piled in close proximity to the road: *Held,* Not error, under the allegations, for the trial court to permit the plaintiff to prove that the company had no flagman at the crossing of the street, as one of the circumstances existing at the time and place of the accident.

*Error from Shawnee District Court.*

THIS action was brought September 5, 1879, by *Lyman Richardson* against the *Kansas Pacific Railway Company,* to recover $10,000 for the injury to plaintiff's person and also to his team, harness and wagon, occasioned by the negligence of defendant's agents and employés in running over with its locomotive and train said team, etc., while being driven by him across Kansas avenue, a main thoroughfare of the city of Topeka, adjoining the passenger depot of the defendant. Plaintiff testified:

"I live on Western avenue and Fifth street; I came here last April, and have a wife and three children. On the 13th of last August, 1879, I was hauling rock for the distillery; was going from the bridge north on Kansas avenue; my team was going north on a slow trot. I looked to the west. All I saw west of me was a large pile of lumber. I had never been there before Monday; never saw the cars there but once; heard a good deal of noise; didn't hear bell, whistle, or anything. I looked ahead, and everything was all clear in the street. When I saw the train, the first thing I threw up my hands and pulled my team around, and the train whooped, whooped, whistled and struck about the same time. When I woke up, was lying on my back half-way down the depot building. I remember two men helping me up, and I said my back was hurt. I saw my horse with three legs cut off. When I got up and walked about, some gentleman asked if I was hurt. Some one came out and shot the horse. Wagon

all smashed to pieces. Didn't know what became of my mule until Friday morning. My team, wagon and harness were worth $300. I was making $3.25 to $3.50 per day. I worked hauling rock. Never sick but once, twenty years ago, and doing heavy work. After cars struck me, I felt pain in my back. I went walking about; walked better that evening than afterward. In morning I lay flat on my back. Dr. Early came five or six times to attend me; gave me liniment to rub me. Was four weeks in bed. I couldn't tell what place was hurt; my whole body was hurt; I suffered every night for two or three weeks. I ain't able to do anything, but walk about; can't work. I can't stoop over; have to carry my back straight. I first saw the cars; didn't hear whistle or bell, there was so much racket and noise. There was no one there to stop me or warn me. Was about 'from here to there' from lumber. When I woke up was on platform of depot. I am about forty-three years old. I had sideboards and dumpboards in wagon, stone-hauling bed. My son was on the wagon with me. Railroad company has not paid me anything."

On cross-examination, witness further testified as follows:

"I made three trips on Monday; didn't see any cars on Monday. I made four trips on Tuesday; didn't see any cars except at sun-up. On Wednesday I saw four-horse 'bus at track. I was about length of this room from 'bus when I saw it first. Saw 'bus there before Wednesday morning. Didn't know what they were there for. I was in a big hurry; had made three trips before I got hurt. I was thinking about my business, and nothing else; wanted to make as many trips as possible. When I first looked up I wan't very far from road. When I got to street this side of track, I didn't know whether I looked up that street or not, but I did look west before I got to the track. Freight cars were behind lumber. Didn't hear anybody call; was thinking about my business. Boards rattled in wagon; lots of noise. Looked straight ahead. Didn't hear bell; can't swear whether one was rung or not. First thing I did when I saw train was to throw up my hands, to wheel horses round; they were on first ties of track; horses were turning when struck; wan't thinking about train. It was about five or six minutes after I was struck before I woke up. It hurt me worse to lean back than to stand up. I walked up stairs to see my boy; then I walked down stairs, and then home, on Western avenue and Fifth

street. I saw the doctor first that night. Mr. Herald carried my boy home. Mr. Herald was there when I got hurt. I didn't send for Dr. Early. On this side of the bridge I was breaking down, and had to get a cane. I saw Mr. Herald at depot after I got hurt."

Reëxamination: "I looked, and saw pile of lumber on my left."

Upon redirect, plaintiff testified:

"On account of the accident, I lost the use of my sexual organs, and have not had the use of them since the accident. Dr. Early came to me five or six times, and said he would not come back until I sent for him. My son is well. I haven't paid Early anything, and have not promised to pay him anything; don't know what he charges. Haven't bought any medicine. I walked home after I was hurt. I don't think I took my mule and hitched him to the fence. I never heard man call out. Mr. Sheldon and another came to me and rubbed my back, and said, 'You will be all right.' He said, 'We came to make a kind of settlement.' I said I felt so bad that I didn't want to talk."

There was other evidence of the occurrences at the time of the accident. Some of the witnesses testified that the train came in unusually fast; that there was a failure to blow the whistle or ring the bell until the collision, and that there was no flagman at the crossing. The evidence for the defendant was, that a number of persons hallooed to plaintiff for him "to stop—the train was coming;" that the driver of a four-horse 'bus, standing a few feet south of the track and west of the depot, hallooed and took off his hat at him, and "told him the train was coming;" that the whistle was blown 300 or 400 yards west of the crossing, and the bell rung continuously for 100 yards before reaching the crossing; and that the train was not running at a high rate of speed. The employés on the train gave evidence that all used due care. Other facts appear in the opinion. The court charged the jury as follows:

"This is an action brought by Lyman Richardson, the plaintiff, to recover from the defendant damages which he alleges were sustained by him from the careless, unlawful and negligent conduct and acts of the servants, agents and em-

ployés of the defendant. He alleges that the locomotive and train of cars of the defendant, while crossing Kansas avenue in the city of Topeka, ran against and over him, his wagon and team, injuring him and injuring his team, wagon and harness; that this was done by the negligence, carelessness, default and unskillfulness of the servants, agents and employés of the defendant, and without any fault of the plaintiff.

"The jury are the exclusive judges of the evidence, of its weight, and of the credibility of the witnesses.

"The burden of proof is upon the plaintiff to prove the alleged negligence, carelessness or fault of the defendant, (or the servants, agents or employés,) and injuries resulting therefrom, and that he, the plaintiff, was in the exercise of due care at the time, and that he was not guilty of any negligence that contributed to the injury of which he complains.

"By law, railroad companies are liable for all damages done to person or property, when done in consequence of any neglect on the part of the company.

"While this is the rule, the person injured must not be guilty of any act of negligence that contributed to the injury. If he is, he cannot recover. But if the negligence of the person injured contributed only in a remote degree to the injury, and the negligence of the company was the immediate cause of the injury, and with the exercise of ordinary prudence and care by the company the injury could have been prevented, then the company is liable. If the negligence of the person injured was *slight only,* and the negligence of the company was *gross,* there is no such contributory negligence on the part of the person injured as would prevent a recovery.

"Whether or not there was negligence on the part of the company or its employés, is a question of fact for the jury to determine from the evidence and the law as given them by the court. And if there was, what was its nature and degree?

"Now negligence is a want of due diligence. Common or *ordinary negligence* is the want of that degree of care which an ordinarily prudent man would ordinarily exercise under like circumstances.

"Slight negligence is merely the failure to exercise great or extraordinary care.

"Gross negligence is the want of slight diligence.

"The degree of care and diligence necessary and proper in each case varies according to the surrounding circumstances;

and the jury, from all the evidence, must decide what degree of diligence and care is necessary and proper under the circumstances of the case proved.

"Railroad companies must be held to a higher degree of care in passing over a crossing in a populous city than in places where there is less travel. Regard for human life and safety demands this.

"In determining the question as to whether there was any negligence on the part of the defendant, it is proper to consider the rate of speed at which its cars were running; whether there was any neglect on the part of the defendant in giving proper warning before crossing the street. In deciding upon the degree of speed at which the cars were running, you may consider, in connection with the other evidence, the distance the cars ran before they stopped, after crossing Kansas avenue.

"It is not enough for the plaintiff to prove simply that the defendant was guilty of negligence, but you must be satisfied from the preponderance of the testimony, that but for the negligence on the part of the company the injury would not have happened.

"Now it is the duty of persons about to cross a railroad track to look about them and listen and see if there is danger, and whether they can cross the track in safety, and they are not relieved of this duty of care and caution by the fact that a train is behind time, or is running at an unusual rate of speed, or that they are absent-minded or absorbed in their own business. They are bound not to go recklessly upon the track, but to observe the proper precaution themselves, although they are not necessarily obliged to stop before crossing the track, to avoid accidents; and in such a case as this, it is indispensable to a right of recovery that the injured party shall have exercised ordinary care, such as a reasonable, prudent person will always adopt for the security of his person or property, or that the injury be willfully or wantonly inflicted by the defendant, and the mere running at too great a rate of speed will not make the injury willful or wanton. He has no right to take for granted that no train is approaching, and if he approaches the crossing at such speed as to be unable to control his team, or stop it if necessary at such a distance from the track as to avoid danger, he is guilty of negligence which will prevent a recovery. And if he sees the train, or could have seen it by the exercise of ordinary diligence, in time to stop his team, and did not stop it or attempt

to stop it, he cannot recover. And if you find that the plaintiff was warned by bystanders that the train was approaching, in time for him to have stopped and avoided the collision, and did not heed them, he cannot recover, even though you may find that the defendant was guilty of negligence.

"Now, while it is a general rule that a person approaching a railroad crossing should use both eyes and ears to discover and avoid an approaching train, there may be circumstances, or a state of facts existing in some cases, where the most vigilant exercise of those organs will fail to warn and protect him — such, for instance, as noises, or obstructions, and in such cases the law does not charge a person with contributory negligence; but if such circumstances or facts were known to the person, it is only an additional reason why he should be more vigilant and cautious, and if, having such knowledge, he neglects to be duly cautious, he acts at his own risk.

"If the jury find for the plaintiff, they will assess his damages at such a sum of money as will fully and fairly compensate him for the damages sustained by reason of the injury received. They will take into consideration the nature and extent of his personal injuries, his sufferings, the length of time he was disabled, the value of his time, his expenses in being cured, his condition with respect to the injuries at this time, the effect the injuries will in all probability have upon him in the future, and the injury done to his wagon, harness and team. Taking all these elements into consideration, as shown by the evidence, you will, if your verdict is for the plaintiff, assess full compensatory damages.

"In addition to your general verdict, you will answer in writing the questions herewith submitted to you."

Whereupon the jury retired, and returned a verdict, together with the questions submitted, answered by them. A copy of said verdict, and the questions and answers, is as follows:

"*Lyman Richardson, Plaintiff, v. Kansas Pacific Railway Co., Defendant.*—We, the jury, find for the plaintiff, and assess his damages at the sum of two thousand dollars."

The jury answer the questions submitted to them in writing, as follows:

"Q. 1. At what speed was the train on this defendant's track running at the time of the injury? A. Fifteen miles per hour.

"Q. 2. Did the defendant, the Kansas Pacific railway

company, give the plaintiff, Richardson, proper signals warning him of the approach of the train as he, the plaintiff, approached the crossing? A. No.

"Q. 3. Was the defendant, the Kansas Pacific railway company, guilty of gross negligence, which caused the injury to plaintiff? A. Yes.

"Q. 4. Was the plaintiff, Richardson, warned that the train was approaching in time to have stopped his team and avoided the collision? A. No.

"Q. 5. Did he use his eyes and ears as an ordinarily prudent man would have done under like circumstances? A. Yes.

"Q. 6. Irrespective of any warning by others, could he have heard or seen the train approaching in time to have avoided the danger, if he had used ordinary care and diligence? A. No.

"Q. 7. Did other persons, standing at an equal distance from the track with Richardson, at any time before he reached the track, hear the bell ringing or the engine approaching? A. No, situated as the plaintiff was.

"Q. 8. What (if any) negligence was Richardson guilty of contributing to his injury? A. Not any.

"Q. 9. Was the defendant guilty of any negligence contributing to the injury, and if it was, what was it? A. Yes. Running at too great a rate of speed and not giving suitable warning.

"Q. 10. Did Richardson whip up his team just before reaching the track? A. Yes.

"Q. 11. What would the engineer have done that he did not do, after he discovered the plaintiff, to have prevented the injury? A. Nothing. It was too late.

"Q. 12. Was the plaintiff Richardson guilty of gross negligence, contributing to his injury? A. No.

"Q. 13. How near the crossing of Kansas avenue, on the side-track, was it possible for freight cars to stand and allow the passenger trains to pass? A. Fifty feet.

"Q. 14. How near to the east end of the lumber yard was lumber piled at such height as to obstruct the view of a train approaching from the west, to one riding north along Kansas avenue, and standing up in a wagon? A. Within five feet.

"Q. 15. Was Richardson standing up in his wagon as he approached the track? A. Yes.

"Q. 16. Could an ordinarily prudent man, in Richardson's

position, have heard people call out in time to have stopped
the team before reaching the track? A. No.

                    "WM. D. WHITTON, *Foreman.*"

March 6, 1880, a motion for a new trial was overruled,
and judgment rendered for the plaintiff upon the verdict. The
*Railway Company* brings the case to this court.

*J. P. Usher*, for plaintiff in error:

1. The petition specifies with particularity the alleged neg-
ligence of the defendant, both of omission and commission.
There is no imputation of negligence in not keeping a flag-
man at the crossing. To show negligence by defendant, it
seems it is competent to prove that it kept no flagman at the
crossing. (63 N. Y. 522, and cases cited.)

The admission of evidence of negligence not alleged in the
petition, in addition to that specified, is error. (41 Mich. 433;
19 Kas. 542; 8 id. 658; 4 Sandf. 665.)

2. The testimony of the plaintiff, including that of all the
witnesses in the cause, does not prove a cause of action. The
plaintiff, by his own testimony, shows himself to have been
negligent. His negligence was without qualification or miti-
gation. The defendant had the right to assume that the
plaintiff had ordinary intelligence, and would conduct him-
self with ordinary prudence. (58 Ill. 300; 81 id. 450; 1 Dil-
lon, 579.)

3. The plaintiff, by his own testimony, proves that he was
negligent, and that his injuries occurred solely from his neg-
ligence, and that neither court nor jury has the right as against
the defendant to assume that the testimony of the plaintiff is
untrue. It is his own sworn admission of his conduct at the
time of his injury. (22 Kas. 353; 20 Mich. 128.)

4. Plaintiff proves, beyond any question, that he did not
take the slightest precaution to protect himself against in-
jury. It is absolutely certain that he could have seen the
train if he had looked in the right direction for it; and that
he could have heard it if he had listened for it, and this in-
dependent of the alleged whistling and ringing of the bell.

He admitted that his own wagon was so constructed and equipped as to make so much noise from the rattling of the boards upon it that he did not hear the approaching train of locomotive, tender, and eight or ten cars, and offers that as an excuse for not hearing. The fact that he had such an equipment should, in the exercise of due care, have compelled him to an increased watchfulness, a more vigilant use of his eyes, but instead of using them he says: "I looked straight ahead." It is true he says he looked to the west, and all he saw was a large pile of lumber, but he don't say that the lumber obstructed his view of the approaching train, or that he looked for it; and it is absolutely certain that he did not look for the train, for he swears in his cross-examination: "Wan't thinking about train." Giving plaintiff's testimony the construction most favorable for him, and it appears absolutely certain that he drove upon the track utterly heedless of any danger. If anything is settled in law, it is that a party about to cross a railroad track is bound to exercise reasonable care and diligence to avoid injury from approaching trains. (63 Ill. 178; 25 Mich. 470; 34 Iowa, 153; 33 Ind. 335–364; 105 Mass. 77; 28 Ohio St. 340; Thompson on Negligence, 401, 1212.)

5. Though the presumption of law is that a verdict is according to the facts proved, yet the testimony in this case is so overwhelmingly against the plaintiff, aside from the plaintiff's own showing, and so consistent with his showing, it is insisted that the testimony ought to be considered in connection with plaintiff's for the purpose of showing that plaintiff was negligent and that defendant was not negligent.

6. The burden of proof was upon the plaintiff to show the alleged negligence of defendant and his own care. This is not the case of a passenger injured while being transported, in which case, unless the plaintiff proves himself negligent, as for instance by thrusting his limbs or head out of the window, the law presumes him to have been exercising due care. The testimony shows beyond contradiction that the plaintiff's injury was caused by his negligence and want of care, and it

equally fails to show any culpable negligence of the defendant; and unless a party can show, in cases of this kind, negligence of the defendant and due care on his part, he fails to maintain a case. Proof of one of these factors will not do. This case comes within the decision of this court, frequently announced, that if the plaintiff fails to make any proof of his cause of action, his judgment must be reversed. (21 Kas. 318; 23 id. 347; 18 id. 345; 1 id. 304; 7 id. 380; 10 id. 519.)

7. The court erred in its instruction to the jury. Here we have again the oft-complained-of interpretation of the law, that if plaintiff's negligence was slight only, and defendant's was gross, plaintiff may recover. Again and again the court has been urged to discountenance ruling in this form. This court has declared that it does not adopt and has not adopted the doctrine of comparative negligence. (14 Kas. 66.) And yet it cannot be successfully contended that an instruction in the form given in this case does not lead the jury inevitably to compare the alleged or supposed negligence of the respective parties. The instruction is the same as that which the judges give in Illinois, where the rule of comparative negligence prevails, and by no other court is it tolerated where such rule does not prevail. The decisions of this court upon that subject are understood to be as in Illinois, and that the rule of comparative negligence prevails here. (Thompson on Neg. 1172.)

Generally, it is believed that lawyers at home and abroad consider that this court has adopted this rule of comparative negligence. The learned and careful judge who tried this cause evidently intended to make this question so plain in his instruction that this court would not be at any loss to ascertain that he meant to instruct the jury to consider and compare the negligence of the parties at the time of the accident; and he goes on to declare and define what slight negligence is, and what is meant by his previous instruction in respect to such negligence—and the same as to gross negligence. The jury were told that "slight negligence is merely the fail-

26—25 KAS.

ure to exercise great or extraordinary care;" and according to this instruction any degree of negligence occurring by the failure to exercise great or extraordinary care would be slight negligence. And the jury would understand from this that extraordinary negligence, as defined by the court, would, within his former instruction, be such slight negligence only, and would not stand in the way of plaintiff's recovery. Then, as to the definition of gross negligence, which is declared to be "the want of slight diligence:" by this definition, the jury were left to infer that, if they found that there was only slight diligence and care in operating the train, the defendant was guilty of gross negligence—not ordinary negligence, but gross; and that, for the want of such slight diligence, the jury were to find there was such gross negligence as to make the company liable. The complaint we have to make of all this is this: The chronic errors which grow out of the expression that, if plaintiff's negligence is slight and defendant's gross, he must recover. It misleads and confuses. The rule is, and the one which in Pointer's case was announced to be the rule of this court, that if the plaintiff was guilty of negligence which contributed to the accident, he cannot recover.

8. There was no proof of negligence of the defendant. The alleged negligence of the defendant consisted in the rapid movement of the train without signals by bell or whistle. There is absolutely no evidence that the whistle was not blown or the bell rung. The most that can be said is, that plaintiff has produced five witnesses who said that they did not hear the whistle sounded or the bell rung, but one of them said it was such a common occurrence that he did not notice it; while the defendant has affirmatively proved by five witnesses that the whistle was sounded more than three hundred yards before reaching the crossing, and the bell continuously rung thereafter, until the collision. This affirmative proof must in all stages of the case overbear the negative testimony of the plaintiff. (Thompson on Negligence, 434, and note 7, and case cited in note.)

*Campbell & Herald,* for defendant in error:

There was nothing in the admission of evidence that the plaintiff in error had no flagman at the crossing, which prejudiced its rights. This evidence tendered no new issue, and would be proper under the general allegation of negligence in the petition. The court could have properly allowed an amendment to supply this special allegation on the trial, and the judgment should not be disturbed because there was no formal amendment actually made. (8 Kas. 247; 12 id. 449; 6 id. 206; 17 id. 166.)

There is no variance between the evidence and the material allegations of the petition. (19 Kas. 407; 10 id. 127; 70 Ill. 211.)

The special findings of the jury settle every question in the case in favor of the plaintiff, and as the defendant presented all the questions except the first two, and was present when the answers were returned by the jury, and made no objections to the form of the findings, it cannot now claim the findings are not proper. The findings and verdict, having been approved by the court below, should stand. (21 Kas. 545; 14 id. 527; 19 id. 13; 17 id. 173; 15 id. 116; 16 id. 207; 10 id. 126.)

This case was tried by a fair and impartial jury, which heard all the witnesses testify, and viewed the *locus in quo;* and it was in their province to pass upon every question of fact submitted to them, and to draw conclusions from the entire evidence to sustain their verdict. (18 Kas. 529; 14 id. 53; 8 id. 111, 408; 16 id. 255; 45 N. Y. 450.) All questions of negligence are for the jury, and the jury found specially that the plaintiff was not guilty of contributory negligence. If the evidence in a case merely tends to show contributory negligence, it is for the jury to pass upon it. (14 Kas. 53; 39 N. Y. 68; 53 id. 654; 52 id. 439; 32 id. 603; 36 id. 133; 34 id. 626; 75 id. 332; 28 Wis. 487; 29 id. 21.)

The burden of proof was upon the defendant to show want

of care in the plaintiff which contributed to the injury: This was a matter of defense, and plaintiff was not required to show this in order to make out a case against the defendant. (7 Kas. 388; 14 id. 53; 22 id. 50.)

The evidence shows that plaintiff was not acquainted with the locality, or with the time for trains to pass the crossing, and that he looked both ways before crossing the track, and looked to the west, the direction from which the cars were coming, but could not see the train by reason of lumber and freight cars. Defendant, well knowing the crowded condition of the street, the obstructions to view and the condition of the track, approached the crossing with its engine and train of eight cars at a very rapid and dangerous rate of speed without sounding a whistle or ringing a bell; and the fact that the train did approach the crossing without giving proper warning, at a point where the view was obstructed, was an assurance to plaintiff that there was no danger, as the crossing was not dangerous only when made so by defendant's trains. (32 N. Y. 597; 35 id. 33; 42 id. 231; 10 Kas. 438.)

Seven witnesses did not hear a bell or a whistle, until the instant of the collision, when it was too late to avoid the injury. Plaintiff began to pull his team around off the track the instant the warning was given. Two of the witnesses testified that they would have heard the bell if it had been rung. All this was proper evidence to show that the bell was not rung. (36 N. Y. 132; 52 id. 439.)

The fact that the train ran its length of four hundred and fifty feet after the brakes were applied, shows that the train was running at a very rapid and dangerous rate of speed. To cross the main thoroughfare of a city of over fifteen thousand inhabitants at such a rate of speed is gross negligence. (11 Kas. 649; 12 id. 332; 70 N. Y. 124; 67 id. 418; 67 Barb. 206; 84 Ill. 397.)

That plaintiff did not hear people call out is excusable, because others standing around did not hear. Nellan, who was nearer plaintiff than any other witness, did not hear anybody

call.   Phillips, standing in an express wagon near to plaintiff, "heard one halloo, and immediately heard a crash." There was a great amount of noise and confusion, which made it impossible for plaintiff to hear.   This will excuse him from hearing. (42 N. Y. S. C. 225; 67 Barb. 206; 47 N. Y. 403; 14 Kas. 53.)

The instructions are altogether more favorable to the defendant below than it has any right to expect. (22 Kas. 50.) The instructions as to negligence are in accordance with the rules laid down by this court. (5 Kas. 180; 14 id. 50; 10 id. 472; 11 id. 306.)

The opinion of the court was delivered by

HORTON, C. J.: Various reasons are urged by the counsel of the railway company for setting aside this verdict and judgment, but the main reasons alleged are, that from the undisputed facts in the case, the railway company was not negligent, and Richardson was negligent.   These reasons are presented in different ways.   It is said there was no proof of negligence of the company; that Richardson did not take the slightest precaution to protect himself, and that his injuries were all caused by his own want of care.   The jury in the general verdict and the special findings decided otherwise. They found specially that the railway company was guilty of negligence in running at too great a rate of speed, and in failing to give proper signals of warning of the approach of the train to the crossing.   They further found that Richardson was not guilty of any negligence contributing to his injury. We are therefore called upon to determine whether the general verdict and special findings were clearly against the evidence.   In reference to the negligence of the company in failing to give signals of warning, the plaintiff and five witnesses who were present, testified they did not hear the whistle sounded or the bell rung until the instant of the collision. The plaintiff testified: "I looked to the west, and all I saw was a large pile of lumber; didn't hear bell, whistle, or anything.   I looked ahead, and everything was all clear in the

street. When I saw the train, the first thing [I did] I threw up my hands and pulled my team around, and the train whooped, whooped, whistled and struck about the same time." One of his witnesses stated, "He was ten or fifteen feet from the depot, and would have heard the signals if any had been given." Another said: "He was in a warehouse, two hundred feet west of Kansas avenue and north of the track, with the door open to the track; that he stood in the door when the train passed; didn't notice any ringing of the bell when the train passed him, and didn't hear train whistle for station, but this was so common, might have failed to notice it." Other of these witnesses saw the train come in and were in positions to have heard the signals if there had been any. J. B. Johnson, who was a passenger in the car next to the rear one, testified "he didn't hear any alarm." On the part of the defense, the fireman testified: "He whistled for station above the tank, 300 or 400 yards west of the crossing; was ringing the bell when he came in; commenced opposite the tank, and kept it up till train stopped; whistled again before reaching the crossing." The engineer testified: "Whistled for station; bell was ringing; commenced at water tank, and continued till we stopped." Taylor said: "I heard train first whistle at water tank, 200 yards from crossing; the ringing of bell at switch, 100 yards west of crossing, and the bell rang until they whistled at corner of lumber yard, 75 or 80 feet from where the train struck." Four other witnesses stated they heard the whistle sounded 300 or 400 yards west of the crossing, and the bell ringing when the train came in. Now, though most of this evidence on the part of the plaintiff below was of a negative character, and the company gave positive evidence of a greater number of witnesses to contradict and overcome it, still there was a sufficient conflict of evidence to raise a question of fact, which the trial court was justified in submitting to the jury. The evidence against the giving of the signals was more, when carefully considered, than a mere "I did not hear." Some of these witnesses had their attention directed

1. Question of fact for a jury; finding sustained.

to the train as it came in; they were looking at the train, and were in a position to give heed to the presence or absence of the signals. The evidence conduced to prove that the signals were not properly and timely given; at least it was some evidence in that direction. The failure to give signals must be proved by witnesses that they did not hear them. When others testify that they gave them, and others testify that they did hear them, there is evidence on both sides to be considered. The evidence before the court being sufficient to be submitted to the jury, and to be considered by them, it was sufficient to sustain a finding that proper signals of warning of the approach of the train to the crossing were not given. As to the effect of the omission of timely signals, see *L. L. & G. Rld. Co. v. Rice,* 10 Kas. 426; *Renwick v. N. Y. C. Rld. Co.,* 36 N. Y. 132.

We do not intend by the conclusion we have reached, to have it understood that the mere "I didn't hear" of several witnesses, when met by a greater number of witnesses that signals were given, is proof that signals were not given. In this case, we think there was some proof tending to show that the signals were not given, and that the jury had the right to pass upon the matter. This is all we decide now. As to the speed of the train, an examination of the evidence clearly shows the special finding of the jury that the train was running at the time of the injury fifteen miles per hour had ample support. Brown testified that the train was running from fifteen to twenty miles an hour; Nellan said, "running fast." Phillips stated, "from ten to fifteen miles per hour." Lukins gave evidence that the train came in "unusually fast." Johnson said the "train was coming fast." The testimony of several witnesses was to the effect that the train ran its length, 450 feet, after the brakes were applied. Courtney, a locomotive engineer of eighteen years' experience, testified: "If the train had been going from eighteen to twenty miles an hour, it ought to have been stopped with the appliances used in fifty feet." Much of this evidence was contradicted by other witnesses of the company; but it is undeniably

true that considerable evidence was given on both sides.   The jury heard the witnesses, passed upon their credibility, and rendered a finding which has received the approval of the trial court.   To us it is conclusive.   It was said in *Pacific Rld. Co. v. Houts*, 12 Kas. 332: "For a company to run its train at the highest speed through the crowded streets of a city would be the grossest negligence; and the rate of speed at which those trains may be run is relative to the dangers attendant on such running."   Upon the claim of counsel that Richardson was guilty of contributory negligence, and that the findings of the jury to the contrary are without proof, we have

2. Province of a jury.

this to say: Where the evidence on such a question is doubtful, and the inferences to be drawn from the facts are uncertain, it is the province of the jury to decide.

The degree of diligence required of Richardson was such as a man of ordinary prudence would have exercised under similar circumstances. (*L. L. & G. Rld. Co. v. Rice*, supra. See *Desmond v. Brown*, 29 Iowa, 54.)   As there was evidence that he looked west before crossing the track, saw only a pile of lumber, heard no bell or whistle, then looked ahead, saw the street clear, and as soon as he saw the train, pulled his team around, and as others as near as himself to the persons calling out for him to stop, did not hear the cries of "Stop!" and as there was evidence that the train was running at a too great rate of speed, and that no signals were properly given, there were such doubtful and qualifying circumstances attend-

3 Contributory negligence, question of, for a jury.

ant upon the case that the question of his negligence or want of care was a matter for the judgment of a jury, whose ordinary observation and experience of the conduct of men might be properly called into requisition.   The case, as to the negligence of the injured party, is a very close one, and although it may be doubtful whether the findings thereon are absolutely correct, the facts against them are not so clear, nor is the jury so manifestly mistaken, that we feel at liberty to set the verdict aside.   The law has said, in cases presenting the facts and

surroundings of this one, that the judgment of twelve men, and not the opinion of one, two or three, shall control. (*K. P. Rly. Co. v. Pointer*, 14 Kas. 37; *K. P. Rly. Co. Kunkel*, 17 Kas. 145; *P. P. & J. Rld. Co. v. Siltman*, 88 Ill. 529.)

Error is also alleged in the admission of evidence that the company had no flagman at the crossing. It is argued that as the petition specified with particularity the acts of negligence of the company, both of omission and commission, and omitted any reference to the absence of the flag-

4. No flagman at railroad crossing.

man, any evidence thereof was incompetent. We do not concur with counsel, who presses this point so persistently. The absence of the flagman at the crossing could be proved as one of the circumstances existing at the time and place of the accident. Such evidence was a part of the *res gestæ*, and tended to show to some extent the necessity of the timely signals of warning in approaching the crossing. If no flagman was at the crossing, the more important the signals to warn parties about to cross. The proof of the absence of the flagman was not the negligence found by the jury, nor the actual basis of any recovery. It was only admitted as an incident or circumstance to establish the degree of negligence in running the train at a great rate of speed without signals. Therefore, in our view, it is not the case of a pleader averring in his petition one ground of action, and on the trial proving and recovering on another. The case of *T. W. & W. Rly. Co. v. Foss*, 88 Ill. 551, to which we are referred as conclusive against the admission of such evidence, is not parallel. There the only negligence averred was, that the defendant carelessly ran its train upon which plaintiff was a passenger, yet, on the trial, a recovery was sought upon the ground that the defendant was negligent in failing to properly fence its track and providing steam brakes. The difference between the case cited and the one at bar is manifest without extended argument. In the one, the evidence offered tended to characterize the acts of negligence charged in the petition; in the other, a recovery was sought upon the proof of independent and distinct acts of negligence not alleged in the petition.

It is further urged, that the court erred in its instructions to the jury. It is conceded that the instructions were warranted under the previous decisions of this court; but it is contended that this court ought to discountenance its former rulings upon the degrees of negligence. Counsel alleges that this court has adopted what is generally understood as comparative negligence, and that the rule "misleads and confuses." The comments upon this question in the case of *K. P. Rly. Co. v. Pointer*, 14 Kas. 37, and the thorough discussion of the subject of negligence by Mr. Justice VALENTINE in his concurring opinion in the case of *Young v. U. P. Rly. Co.*, 19 Kas. 488, together with the numerous decisions of this court in the same direction, render unnecessary any discussion here.

Upon the whole record, we perceive no error prejudicial to the rights of the railway company, and therefore the judgment of the district court will be affirmed.

All the Justices concurring.