THE WICHITA & WESTERN RAILROAD COMPANY V. J. C. DAVIS.

1. CROSSING RAILROAD — *Eyes and Ears to be Used.* Before a person can recover for injuries received in crossing a railroad at a public road or street, he must, before attempting to cross, recognize the danger and make use of the senses of sight and hearing in determining whether a train is in dangerous proximity; and if he neglects this duty and ventures blindly upon the track, without an effort to ascertain whether a train is approaching, he does so at his peril.

2. REASONABLE CARE — *Question for Jury.* The care and caution required of a person in crossing a railroad is such reasonable care and caution as a man of ordinary prudence and judgment would exercise under similar circumstances; and where there is a conflict in the testimony that reasonable men might differ about, then it becomes a question of fact to be submitted to the jury.

3. NEGLIGENCE — *Recovery, When.* Where the negligence of one party is great, and that of the other but slight, notwithstanding the slight negligence the party may recover.

*Error from Sedgwick District Court.*

THE defendant in error, plaintiff below, brought this action against the plaintiff in error in the district court of Sedgwick county. The record discloses the following facts: That the plaintiff was a farmer, about sixty years of age, and resided about two miles east of Wichita; that on the 26th day of December, 1883, he had been to the city, and on returning home passed out east on Oak street, which crosses the railroad track of the defendant one block south of the union depot; that on the south side of Oak street, sixty-four feet west of the track, is a peach orchard which obstructs a view of the track until after passing said orchard; that also south of the orchard, facing east on said block, and the railroad where it runs north and south on Fifth street, were several dwellings, and south of these some two or three blocks were some elevators; that the defendant's track runs from the union depot south four or five blocks through the city; that directly east of the main track, and parallel with it, is a switch, and still east of that is a "Y" or switch of the San Francisco road. At the place

where Oak street crosses the main track, and where the injury occurred, the main track, and side track, and switch, are not more than ten or fifteen feet apart. On said track, south of the crossing, were a number of loaded cars standing on the track, extending down at intervals for several blocks, and also one or two cars were standing on the switch or "Y" of the Frisco road, and partly on the crossing. The tracks were about three feet above the grade of the street. On the west side of the main track is a ditch or excavation something like three feet deep, and also a ditch between the main track and the side track. The injury occurred between three and four o'clock in the afternoon. The wind was blowing a heavy gale from the north, and it was cloudy and very dusty. Plaintiff was driving a team hitched to an ordinary two-horse wagon, and he testified that after passing the corner of the orchard he saw a crowd of people at the union depot, and supposed that a train was coming; then he looked south and saw the cars upon the side track, and looked to see whether there was an engine behind them. He looked down the main track, but discovered no train, so he drove on at a walk, and looked both north and south again to see if there was a train approaching, and saw none. He then drove on the track, and when his horses' heads had just passed over the main track, he discovered a train backing towards him. The first car — or the one nearest to him — was a coal car loaded with telegraph poles, some of them extending some distance over the end of the car. Before the wagon had completely passed the track, it was struck by the car and the plaintiff was knocked out of the wagon and received injuries in his back and hips. The train was composed of an engine running backward; after that a flat car; back of that a box car used as a caboose; and still back of that a coal car loaded with poles — the entire train running backward. At the time of the injury the engine was being operated by the fireman, the engineer not being on the train. The conductor being also on the engine, and in the caboose being two brakmen, no person was on the outside, or on the top of the cars, or on the coal car loaded with poles,

and no lookout was kept; and the first that the train-men discovered of the plaintiff was when he was driving on the track. When he was discovered the engine was reversed, and the train stopped at or north of the crossing.

The jury were requested by the defendant to answer certain questions of fact, which they did, as follows:

"1. Is it not a fact that just prior to said accident the plaintiff was driving eastward on Oak street, in the city of Wichita, toward the railroad tracks, situated near the Union depot in Wichita? *Ans.:* Yes.

"2. Is it not a fact that there was situated on the south side of Oak street, and four or five rods from the west railroad track, a peach orchard, about three or four rods wide and four or five rods long? A. Yes; but find said peach orchard to be about sixty-four feet west of railroad track.

"3. Is it not a fact that the peach orchard referred to in the last question was situated about sixty-four feet from the west rail of said railroad track? A. Yes.

"4. Is it not a fact that, after plaintiff passed said peach orchard, there was nothing to obstruct his view of the main track, on which said engine and train of cars were approaching, which would prevent him from seeing said approaching engine and cars for a distance of several blocks, had he looked towards the south? A. Yes.

"5. If you answer the last question in the negative, state fully what such obstructions consisted of, and the height and location of the same. A. ——.

"6. Is it not a fact that the track on which the train was approaching from Oak street south to Douglas avenue, in the city of Wichita, was straight, or nearly so? A. Yes.

"7. State what there was, if anything, to prevent plaintiff from seeing said approaching train, had he looked to the south after passing the corner of said peach orchard, anywhere between Oak street and the old railroad depot on Douglas avenue, in said city, giving location and height of such obstruction. A. By elevator and other buildings south of Central avenue.

"8. Was it not about 4 o'clock P.M., on a bright, clear day, when the alleged injury to plaintiff was done? A. Yes; it was about 4 o'clock, but not a bright, clear day.

"9. Was not plaintiff at that time in the possession of full mental and physical powers, with his senses of sight and hearing unimpaired? A. Yes.

"10. After the plaintiff passed the peach orchard, at the

corner of Fifth and Oak streets, about sixty-four feet from the track upon which the accident occurred, about how far could the plaintiff have seen an approaching train, had he looked to the south? A. About two or three blocks.

"11. After the plaintiff passed the peach orchard situated on the corner of Fifth and Oak streets, state what, if any, obstruction there was to prevent the plaintiff from seeing a train approaching from the south, and give fully and definitely the location and description of such obstruction, if any. A. Yes, by elevators and other buildings south of Central avenue.

"12. At what rate of speed was the train moving which injured plaintiff, at the time plaintiff drove upon the track? A. About twenty miles per hour.

"13. At what rate of speed was the plaintiff driving during the time he was passing from the corner of the peach orchard, on the corner of Fifth and Oak streets, until he reached the railroad track on which the accident happened? A. About four miles per hour.

"14. Was not there a heavy wind blowing at the time of the accident, from the north or northwest? A. Yes.

"15. Where was the plaintiff when he first saw the train approaching which caused the accident? A. In the wagon, and the team on the railroad track.

"16. Where was the train which caused the injury to plaintiff, when plaintiff's team first went upon the track on which the train was approaching? State definitely, as near as you can, the distance from the Oak-street crossing. A. From one to two hundred feet south of the crossing."

Trial by jury, at the February Term, 1886, and judgment for the plaintiff for $6,000 and costs. *The Company* brings the case here.

*Geo. R. Peck, A. A. Hurd*, and *Robert Dunlap*, for plaintiff in error.

*Campbell & Dyer*, for defendant in error.

Opinion by CLOGSTON, C.: Upon this record the plaintiff in error raised but two questions, but as they are substantially one in fact we shall discuss them as one, and that is, did the injury occur by the contributory negligence of the defendant? The plaintiff in error now contends that on the facts found by

the jury it was error not to direct the jury to return a verdict for the defendant, plaintiff in error. Upon this theory it requested the court to instruct the jury as follows:

"I instruct you that if the plaintiff, before driving upon the track of the defendant at which the injury complained of occurred, could at any time have seen the approaching train in time to escape by looking to the south, it will be presumed as a matter of law, either that he did not look, or that if he did look that he did not heed what he saw, and concluded to take the risks of attempting to cross in front of the approaching train; in which case I instruct you that the plaintiff, if you so find the facts, was guilty of contributory negligence, contributing to his injury, and cannot recover in this case."

This instruction the court refused to give. The rule, as contended for by the plaintiff in error, is, that if the plaintiff could have seen, by carefully looking, the approach of the train, then it was negligence for him to drive over the track ahead of the train, knowing that the train was coming; or, if he failed to look, or, if looking, failed to discover the train and drove upon the track and was injured, he cannot recover; or, in other words, that if one does look and fails to discover what it would be possible for others to see, or under some circumstances might have been seen by the person so looking, then it is contributory negligence not to see. If this rule is the true one, then nothing short of the greatest care and caution will warrant a recovery for injuries received through negligence in the operation of trains. We do not understand the rule to be so far extended as to require the greatest care and caution, but only reasonable care, such as a man of ordinary prudence would exercise under similar circumstances. (*Desmond v. Brown*, 29 Iowa, 54; *L. L. & G. Rld. Co. v. Rice*, 10 Kas. 426.) The rule seems to be well settled in this state, that before a person can recover for injuries received in crossing a railroad at a public road or street, he must, before attempting to cross, recognize the danger and make use of the senses of hearing and seeing in determining whether a train is in dangerous proximity; and if he neglect this duty and venture blindly upon the track, without making an effort to ascer-

tain whether a train is approaching, that he does so at his peril. (*Clark v. Mo. Pac. Rly. Co.,* 35 Kas. 354.) The supreme court of Iowa, in speaking of this question, said:

"The instruction was properly refused. It requires too great a degree of care and circumspection. It makes no allowance for the ordinary imperfections of humanity. It requires absolute perfection of attention to surroundings, while the mind is concentrated upon a particular duty. So high a degree of: caution the law does not enjoin. It requires only the exercise of reasonable and ordinary care." (*Greenleaf v. Railroad Co.,* 33 Iowa, 57.)

The supreme court of the United States, referring to an instruction similar to that contended for by the defendant, said:

"It states such duty with the rigidity of a statute, making no allowances for modifying circumstances, or for accidental diversion of the attention to which the most prudent and careful are sometimes subject, and assuming in effect that the duty of avoiding a collision lies wholly or nearly so on one side." (*Improvement Co. v. Stead,* 95 U. S. 168. See *U. P. Rly. Co. v. Adams,* 33 Kas. 427.)

But where the undisputed facts show that this rule has been disregarded, and no precaution has been taken to ascertain and avoid dangers, it then becomes a question of law for the court, and not a question of fact to be submitted to the jury. Where there is a conflict of testimony that reasonable men might differ about, then it becomes a question of fact to be submitted to the jury. The plaintiff testified that he looked north and south, expecting to see a train; that a gale of wind was blowing, and it was very dusty; that he saw the cars on the side track, and looked to see whether an engine was behind them, and saw none; and the fact that the train was moving backward; are questions to go to the jury with the fact that the train was in view for some two blocks south of the crossing, and might have been seen. It was perhaps seen by the plaintiff, and mistaken, under the above conditions of the weather and the character of the train, and he thought it to be on the side track. It was said in *Barnard v. Railroad Co.,* 1 Abb. Ct. of Appeals, 131:

"If there is any conflict in the evidence going to establish

any of the circumstances upon which the question depends, it must be left to the jury. If there are inferences to be drawn from the proof which are not certain and incontrovertible, they are for the jury. If it is necessary to determine, as in most cases it is, what a man of ordinary prudence and care would be likely to do under the circumstances proved — this involving, as it generally must, more or less conjecture — can only be settled by a jury."

In *Webber v. Railroad Co.*, 58 N. Y. 465, the court said:

"It is true that the vigilance and caution of the traveler must be proportioned to the known danger of the injury; but it is also in a measure limited by the usual and ordinary signals and evidences of danger. The natural instinct of self-preservation ordinarily will lead to the employment of all the precaution which the situation suggests to an individual; and whether they are such as would occur to or be adopted by men of ordinary care and prudence, must necessarily, in most cases, be left to the jury. The intelligence and judgment, as well as the experience, of twelve men, must settle a question of that character as one of fact, and not of law."

(*K. P. Rly. Co. v. Richardson*, 25 Kas. 391; *U. P. Rly. Co. v. Young*, 19 id. 488; *K. P. Rly. Co. v. Pointer*, 14 id. 37; *Pa. Railroad Co. v. Weber*, 76 Pa. St. 157; *Carr v. Railroad Co.*, 60 N.Y. 633; *Thurber v. Railroad Co.*, 60 id. 331; *Lonck v. Railroad Co.*, 18 N.W. Rep. 657.)

While this question is a close one, yet we do not feel called upon to disturb the judgment where it is so conclusively shown that the employés of the defendant in charge of the train were so grossly negligent in its management. Although the plaintiff may have been somewhat negligent, yet it is not clearly shown that his negligence contributed to the injury. If he saw the train after passing the orchard, and the train was then some distance south, he might with reasonable safety have crossed before it reached the crossing, provided the train was running only at such a rate of speed as it might properly run in a populous city. This court has repeatedly held that where the negligence of one party is great, and that of the other but slight, notwithstanding the slight negligence the party may recover. (*Pacific Rld. Co. v. Houts*, 12 Kas. 328; *K. P. Rly. Co. v. Pointer*, 14 id. 37; *Sawyer v. Sauer*, 10 id. 466.)

Under all the circumstances of this case, we do not find that the plaintiff was guilty of such contributory negligence as to prevent his recovery. It is therefore recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.