MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v.
J. L. MAGEE.

No. 790.   Decided May 8, 1899.

**1.   Railway—Crossing—Signals—Charge.**

A charge that it was the duty of railway employes operating its engine to ring the bell in approaching a street crossing 150 feet from the point at which the train was started in motion, was not improper, though the plaintiff testified that he saw the engine before it started, where the men on the locomotive testified that it was in motion before plaintiff reached the railroad track. (Pp. 619, 620.)

**2.   Same—Frightening Teams.**

The statute prescribing signals on approaching crossings is intended not only to prevent collisions with persons traveling on the highway, but also to give notice, that they may not approach so near as to incur danger from fright of their teams. (P. 620.)

**3.   Same—Duty to Keep Flagman.**

The question whether it was the duty of a railway company to maintain a flagman at the crossing of a principal street in a populous city and peculiarly dangerous, may properly be left to the jury. (Pp. 620, 621.)

**4.   Discovered Peril—Charge—Harmless Error.**

A charge extending the duty of preventing injury, arising in cases of discovered peril, to the case in which such peril of plaintiff might have been discovered by reasonable diligence, is not ground for reversal where the evidence is undisputed that the peril was actually discovered. (P. 621.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Waller County.

Magee sued the railway company in the District Court of Waller County and obtained judgment. The company appealed, and on affirmance obtained writ of error.

*Baker, Botts, Baker & Lovett* and *A. L. Jackson,* for plaintiff in error. Article 4507, Revised Statutes of Texas, requiring that "the whistle shall be blown and the bell rung at the distance of at least eighty rods from the place where a railroad shall cross any public road or street, and such bell shall be kept ringing until it shall have crossed such road or stopped," was designed to avoid injuries incident to collisions between approaching locomotives and persons, animals, and vehicles passing over public crossings, and it does not apply in actions for injury received solely by reason of a team becoming frightened at the noise of an approaching locomotive. Rev. Stats., art. 4507; Railway v. Thomas, 87 Texas, 286; Railway v. Sgalinski, 46 S. W. Rep., 113; Railway v. Hughes, 68 Texas, 292.

It was error for the trial court to instruct the jury that it was defendant's duty to ring the bell on its locomotive while approaching the crossing, and to keep such bell ringing until the crossing was passed or the engine stopped, and that failure to do so was negligence; there being (1) no evidence that such failure could have been the proximate cause of the alleged injury, and (2) the pleading of defendant in error, as well as his own testimony, being to the effect that he saw the locomotive standing perfectly still from the time he first came in view of it until he reached the crossing; that he saw it constantly, and observed the locomotive at the instant it started, and from that instant knew of its approach. McDonald v. Railway, 86 Texas, 1; Railway v. Nixon, 52 Texas 19; Railway v. LeGierse, 51 Texas, 189; Pakalinsky v. Railway, 82 N. Y., 427; Railway v. Loomis, 13 Ill., 548; Helm v. Railway, 33 S. W. Rep., 396; McManamee v. Railway, 37 S. W. Rep., 119; Burnett v. Railway, 39 Atl. Rep., 663.

An alleged act of negligence [failure to keep a watchman] which is not a proximate cause of the injury becomes immaterial, and if there is no evidence showing the causal relation, it is error for the court to submit the alleged negligence as a ground of recovery. Railway v. Nixon, 52 Texas, 19; McDonald v. Railway, 86 Texas, 1; Railway v. Williams, 41 S. W. Rep., 501; Railway v. Platzer, 73 Texas, 123; Railway v. Loomis, 13 Ill., 548; Pakalinsky v. Railway, 82 N. Y., 426.

It is not the duty of those operating a locomotive to anticipate that teams will be frightened by the ordinary noises and appearance of locomotives and cars. Their duty with reference to those endangered by animals becoming frightened first arises when it actually becomes reasonably apparent to them that the team has become or is about to be

frightened and dangerous. There is no duty to look out for such danger or use any precaution with reference thereto until it manifests itself. Hargis v. Railway, 75 Texas, 23.

*Baldwin & Meek* and *R. E. Hanney,* for defendant in error.—The trial court's charge should always be construed by giving consideration to it as a whole, and if it should be defective in stating general propositions of law, but said defect is supplied or cured in applying the law to the facts, then such defect in stating the general proposition is no ground for a reversal of the case. Rost v. Railway, 76 Texas, 172; Receivers v. Moore, 3 Texas Civ. App., 424; Brown v. Durham, 3 Texas Civ. App., 251; Pridham v. Weddington, 74 Texas, 357.

Reference to following authorities will show that the duty to give the statutory signals is owing to those about to use the crossing, those who are using the crossing; also he who has just used it. Railway v. Lowry, 61 Texas, 149; Reynolds v. Railway, 69 Fed. Rep., 808; Pike v. Railway, 39 Fed. Rep., 754; Bell v. Railway, 72 Mo., 50; Evans v. Railway, 62 Mo., 49; Elwood v. Railway, 4 Hun, 808; O'Donnell v. Railway, 6 R. I., 211-216; Clark v. Railway, 35 Kan., 350; Railway v. Feathers, 10 Lea, 103; Railway v. Golden, 93 Ga., 510.

The following authorities support the proposition that the signals required to be given are to protect, first, against collisions; second, against damages by frightening of teams upon highways near crossings, etc. Railway v. Lowry, 61 Texas, 149; Wallace v. Railway, 42 S. W. Rep., 865; People v. Railway, 25 Barb., 199; Railway v. Metcalf, 44 Neb., 848; Lonergan v. Railway, 87 Iowa, 755; Sanborn v. Railway, 91 Mich., 538; Railway v. Raiford, 82 Ga., 400. The trial court did not err in the seventh and eleventh paragraphs of his charge, for the reason that it was alleged in plaintiffs' petition and established by the evidence that the crossing was one of the public thoroughfares of the city of Houston, universally and constantly used by the public, and especially hazardous, and it was the duty of the court to submit to the jury the question as to whether or not it was negligence in the appellant to operate its trains over said crossing without a flagman. 4 Am. and Eng. Enc. of Law, 929; Eaton v. Railway, 129 Mass., 364; Bailey v. Railway, 107 Mass., 496; Railway v. Killips, 88 Pa. St., 405; Railway v. Richardson, 25 Kan., 391; Welsch v. Railway, 72 Mo., 451; Hart v. Railway, 56 Iowa, 166; Railway v. Yundt, 78 Ind., 373.

It was the duty of the defendant's servants in charge of the locomotive to exercise ordinary care to discover parties attempting to cross its track at the crossing in question and prevent frightening teams while crossing over such public highways. Railway v. Lowry, 61 Texas, 149; Railway v. Watkins, 88 Texas, 20; Shearm. & Redf. on Neg., 5 ed., sec. 463; Bernhard v. Railway, 1 Abb., Ct. App., 131; Railway v. Hewitt, 67 Texas, 479; Wallace v. Railway, 42 S. W. Rep., 865.

BROWN, Associate Justice.—Girard Street in the city of Houston crosses the track of the Missouri, Kansas & Texas Railway Company of Texas near to a bridge over Buffalo Bayou. The general course of the street at that point is east and west, the railroad running north and south. An engine with seven freight cars attached was, on the day of the accident to the plaintiff, moving southward on the railroad to the Houston East & West Texas Railroad depot, which was south of Girard Street, The locomotive and cars stopped at the depot of the Missouri, Kansas & Texas Railroad Company, about 150 feet north from Girard Street, for the purpose of getting orders to govern its movement. When it started from that point southward towards Girard Street, the whistle was not blown nor was the bell rung. The point at which the railroad crosses Girard Street was near to the bridge on the bayou, and there were a great many people who crossed upon this road during each day, it being one of the principal streets leading from the Fifth Ward to the business portion of the city of Houston. The Fifth Ward of the city contained about 10,000 population. There was neither flagman nor watchman kept at this point.

The plaintiff, J. L. Magee, and his father were riding in a wagon drawn by two horses going eastward along Girard Street and on their way home in the Fifth Ward. They arrived at the crossing over the railroad as the engine with the freight cars was approaching the said crossing. The servants of the railroad company negligently caused the locomotive to give out noises and steam to escape therefrom in an unusual and unnecessary manner, whereby the plaintiff's horses became frightened just as the team crossed the railroad track, and ran away. The employes of the railroad company saw that the horses were frightened and discovered that plaintiff and his father were in danger, yet failed to use the means at hand to stop the engine. In passing over the bridge across the bayou, the wagon in which the plaintiff and his father were riding collided with another wagon, which threw both of them upon the floor of the bridge, whereby the plaintiff received his injuries and the father was killed.

Upon a trial before a jury, there was a verdict for the plaintiff and judgment was entered which was affirmed by the Court of Civil Appeals.

The first error assigned in this court is, in effect, that the District Court in giving to the jury the following charge:

"You are further instructed that it was the duty of the defendant when starting its engine towards the crossing in question (the evidence showing that such starting point was within 150 feet of the crossing) to cause the bell on the engine to be rung after starting his engine, and to keep said bell ringing until the crossing should have been passed or the engine stopped, and the failure to do this on part of the employes of the defendant would be negligence."

The writ of error was granted in this case because it was believed that the court committed error in giving to the jury the foregoing charge, the plaintiff himself having testified that he saw the locomotive

before it began to move, because, having notice of the movements of the engine, the failure to ring the bell or blow the whistle was not the proximate cause of plaintiff's injury, but upon careful examination of the evidence, we are of the opinion that the issue was properly submitted to the jury, notwithstanding the evidence of the plaintiff. The employes of the railroad company who were upon the locomotive at the time testified that it was in motion before plaintiff reached the railroad track, and we think that the men who were handling the locomotive had better opportunity to know when it was in motion than the plaintiff, who was observing it from a distance. It was properly left to the jury to say which was correct.

The plaintiff in error insists that the law which requires the bell to be rung or the whistle blown upon the approach to a public highway by a locomotive does not apply to the case of teams becoming frightened, but only to cases of collision with a train. The contention is unsound; the diligence prescribed by the statute is intended not only to prevent collisions between persons traveling upon the public highway and the railroad trains, but also to give notice to those who are approaching such crossing that they may not approach so near as to be unable to extricate themselves from danger. Railway v. Lowry, 61 Texas, 149; Railway v. Bailey, 83 Texas, 25; Railway v. Chapman, 57 Texas, 75.

The court charged the jury, in effect, that if a person of ordinary prudence would, under all the circumstances, have kept a flagman or watchman at the crossing where the plaintiff was injured, then the failure on the part of the railroad company to keep such flagman or watchman was negligence. It is objected to this charge that the law does not require a railroad company to keep a watchman or flagman at crossings on public highways, and that if the train itself is properly managed there can be no liability on the part of the railroad company; that it is not required to provide a person to notify travelers upon the public highway of the approach of its trains. There is a conflict of authority upon this question, but the weight of authority and sound reasoning sustains the charge given by the court. Railway v. Ives, 144 U. S., 408; Bolinger v. Railway, 36 Minn., 418, 1 Am. St. Rep., 680; Eaton v. Railway, 129 Mass., 364; Railway v. Richardson, 25 Kan., 391; Railway v. West, 32 N. J. L., 91; Railway v. Matthews, 36 N. J. L., 533; 2 Wood's Ry. Law, 1330; Bilbee v. Railway, 18 C. B. N. S., 584; Cliff v. Railway, 5 L. R. Q. B., 263. The facts of this case show that the crossing at which the injury occurred was in a populous city, on one of the principal streets, and at a point so near to a bridge crossing the bayou as to render it more than usually hazardous. The evidence justified the court in submitting to the jury the question whether the circumstances were such as to require from the railroad company the precaution to provide some person to notify travelers of the approach of trains; the charge is in harmony with the general principles which govern the liability and prescribe the duties of railroad companies. Such charge would not be ap-

plicable to a state of facts which did not show extra danger in operating trains at that point. In the case of Railway v. Matthews, 36 New Jersey Law, 534, this question was under discussion and the court said: "In this narrow aspect, the rule laid down was this: that if that particular place was so peculiarly dangerous that prudent persons could not use the public road in safety, unless the company employed a flagman or other extraordinary means to signal the approach of their trains, that then, in such event, it was incumbent on them to employ such extraordinary means. And this proposition seems to me to be, in its application to the case then trying, in all respects correct." It is an extra precaution required alone to guard the public against extraordinary hazards.

The trial court charged the jury in substance that if the employes of the defendant saw the plaintiff and knew that he was in peril, or if, *"by the use of ordinary diligence,"* they could have discovered his peril in time to prevent the injury and failed to use the means within their power to avert the danger, then the railroad company would be liable for the injury caused thereby. This rule of law applies only to those cases in which it is shown that such persons *actually knew* of the peril of the party injured and could have averted it by the use of all means in their power, and so much of the charge as directed the jury to find for the plaintiff if the employes, by the use of ordinary care, could have discovered the peril of the plaintiff, etc., was error. Railway v. Breadow, 90 Texas, 26. The error, however, is harmless, because the fact is undisputed that the employes upon the engine did discover the plaintiff and knew that he was in peril. There was no issue as to whether or not they might have discovered him by ordinary diligence. It was a disputed fact whether, after discovering the peril of the plaintiff, the employes used proper diligence to stop the train.

The plaintiff in error assigns many other grounds of objection to the charge of the court, but none of them are sound. We find no reversible error in the proceedings of the court below, and the judgments of the District Court and Court of Civil Appeals are affirmed.

*Affirmed.*